Pittsburgh Commission on Human Relations, Appellant *v.* Central Blood Bank of Pittsburgh, Appellee.

Argued May 7, 1982, before Judges BLATT, WILLIAMS, JR. and CRAIG, sitting as a panel of three.

*Michael Louik*, with him *Thomas D. MacMullan, MacMullan & Associates, P.C.*, for appellant.

*Estelle F. Comay*, with her *Robert L. Potter, Titus, Marcus & Shapira*, for appellee.

OPINION BY JUDGE WILLIAMS, JR., July 5, 1983:

On May 21, 1979, the Pittsburgh Human Relations Commission (Commission) adjudged that the Central Blood Bank of Pittsburgh (Central) was guilty of racial discrimination in failing to hire Duwayne Booker for a job opening. The Court of Common Pleas of Allegheny County reversed the Commission, concluding that the Commission's adjudication was not supported by substantial evidence. From the trial court's order the Commission filed the instant appeal.

Central is a non-profit corporation that distributes blood to hospitals in the Pittsburgh area. Pursuant to that function, Central operates a fleet of delivery trucks. The present litigation arose from Central's failure to hire Booker for an available job opening as truck driver.

As of December 1977, Duwayne Booker worked on Central's premises as a security guard. However, as of that time, Booker was actually in the employ of Gregg Security Services, Inc., which had a contract with Central. Booker had been assigned to Central since late August 1977. On December 28, 1977, Booker saw a notice on a bulletin board at Central advertising an opening for the job of truck driver. Thereupon, Booker filed a job application with Central's personnel director, Ms. Jean Rogers.

After a preliminary screening, the personnel director determined that Mr. Booker met the job qualifications: (1) possession of a valid Pennsylvania driver's license; (2) ability to operate a manual transmission; (3) ability to operate a one-and-half ton truck; (4) ability to unload supplies; (5) familiarity with area streets, highways and hospitals; and (6) ability or willingness to work irregular hours. On February 28, 1978, almost two months after Booker had submitted his application, Central hired Mark Stuckert to fill the

job opening. Mr. Stuckert is white; Mr. Booker is black.

On March 6, 1978, Booker filed a complaint with the Commission, charging that Central had denied him the job because of his race.[1] Pursuant to that complaint, the Commission held a hearing on March 12, 1979. One of the points established was that, at the time Booker applied for a driver's job, Central had only one black driver and eleven white drivers. That one black driver had been hired in October 1977, about two months before Mr. Booker applied.

Booker's testimony included a description of what he viewed to be his special qualifications for the job. He stated that he had gained experience driving trucks of several types while in the army, and that his experience as a local cab driver made him familiar with the geographic area served by Central. Booker also testified that he was familiar with Central's operation, pointing out that he had been assigned there for several months as a security guard. According to Booker, he supplied all of the foregoing information to Central's personnel director during his interview for the driver's job. On the written job application that he submitted, Booker listed four previous job experiences, and set forth that he had graduated from high school and had attended a military quartermaster school.

There was no evidence at the Commission's hearing concerning the content of Central's interview of Mark Stuckert, the person who got the job. Mr. Stuckert's job application showed that he had been the assistant manager of a relative's gas station, and that he had experience driving a tow truck. Stuckert's application listed no other job experiences.

---

[1] Booker's complaint was based on the Human Relations ordinance of the City of Pittsburgh, Ordinance No. 75 of 1967.

Complainant Booker testified that, when he did not get the job, he sought to learn why from the head of Central's transportation department, Thomas Tobias. Mr. Tobias is also black. According to Booker, Tobias denied having any responsibility for the rejection and stated that the decision had been made by the personnel director, Ms. Rogers. However, according to Tobias' testimony, it was he who made the decision to reject Booker and to hire Mark Stuckert. Tobias added that, as head of the transportation department, job applicants were rejected or hired on his recommendation.[2] As to his reason for rejecting Booker, Tobias testified that he had seen Booker smoking a marijuana cigarette about a week before the hiring decision was made. Tobias also stated that Mark Stuckert had been an unsuccessful applicant for the job opening filled in October 1977 with a black man; and that Stuckert had been kept in consideration for the next job opening, which was the one for which Booker applied.

Regarding the alleged marijuana incident, Tobias testified that he saw Duwayne Booker and a Central driver passing between them what appeared to be a marijuana cigarette. According to Tobias, he espied the incident while Booker and the Central driver were seated in a private car near Central's premises. Mr. Tobias conceded, however, that he did nothing to report the alleged incident to his superiors: even though a Central driver was supposedly involved; and even though Tobias was the supervisor of all the drivers at Central. Tobias testified that he did not mention the marijuana incident until he became aware of Booker's application, and that he then told Ms. Rogers about the incident and to reject Booker for that

---

[2] In the course of so testifying, Tobias also conceded that he may have told Booker that responsibility for the latter's rejection was with the personnel office.

reason. Duwayne Booker, in his testimony, denied that the alleged marijuana incident ever happened.

Central's personnel director, Ms. Rogers, testified that her employer's hiring process included checking references supplied by applicants under consideration for employment. She added, however, that Central would defer checking the references if the job applicant so requested. The record in this case shows that Mr. Booker not only submitted references but also consented to having them checked. Nevertheless, according to the testimony of Ms. Rogers, she did not check Booker's references because Tobias had told her to disregard Booker's application. The personnel director also testified that Mark Stuckert, who was given the job, had indicated on his application form that he did *not* want Central to make an immediate reference inquiry of his then employer. According to Ms. Rogers, Stuckert's request was acceptable under Central's hiring procedures, and the checking of his references was to be postponed until such time that a job offer was made to him.

Ms. Rogers acknowledged that Central keeps a written record of the racial identities of persons who apply for jobs. She further testified that Central hired a second black driver in November 1978, about four months before the Commission's hearing on Duwayne Booker's complaint. As of the time of that hearing, Central had two black drivers and ten white drivers.

Stephanie Haugan, an investigator for the Commission, testified as to the results of an interview she had with Ms. Rogers relative to Mr. Booker's complaint against Central. According to the investigator, Ms. Rogers stated to her that it was Central's customary practice to post "help-wanted" ads in newspapers and to notify the union of job openings, but that neither practice was observed as to the job opening for which Duwayne Booker had unsuccessfully applied.

On May 21, 1979, the Commission rendered an adjudication that found Central guilty of racial discrimination in selecting Mark Stuckert over Booker. Included among the Commission's findings was a determination that Booker was more qualified for the job than Stuckert. The Commission also found that Central's statement and evidence with respect to the marijuana incident were "vague and unconvincing," and that Central had not pursued its normal recruitment procedures in this matter.

Based on the above findings, the Commission ordered Central to hire the complainant for the position of driver, with full seniority and conditions of employment as if he had been hired "on or about December 28, 1977." Central was also ordered to pay the complainant the sum of $5,965.48, which represented, according to Commission calculations, the difference between what he would have earned as a Central driver had he been hired on December 28, 1977, and what he did earn from other employment thereafter. As a result of that order, Central took a timely appeal to the Court of Common Pleas of Allegheny County.[3]

The Court of Common Pleas concluded that the Commission's finding of racial discrimination was unsupported by substantial evidence. Upon that basis the court reversed the Commission's order. After opining that Booker was rejected because of the alleged marijuana incident, the trial court determined that Central's evidence regarding that incident established a non-racial reason for refusing to hire the complainant. In that regard, the court reasoned that it was irrelevant whether or not Booker was actually smoking mar-

---

[3] Central's appeal to the Court of Common Pleas was pursuant to Section 752 of the Local Agency Law, 2 Pa. C. S. §752; and Section 933(a)(2) of the Judicial Code, 42 Pa. C. S. §933(a)(2).

ijuana: it was enough that supervisor Tobias assumed he saw Booker smoking marijuana.

The trial court also concluded that the record evidence did not support the Commission's finding that Duwayne Booker was better qualified for the driver's job than Mark Stuckert. The court further remarked that Stuckert had applied for the job before Booker and "had himself been rejected in favor of a black applicant." From the trial court's order of reversal there followed the instant appeal.

The trial court stated that this case was governed by the decision of the United States Supreme Court in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). In the *McDonnell-Douglas* case, it was held that a prima facie case of discrimination under Title VII is made out if the complainant establishes four elements; (1) that he is a member of a protected minority; (2) that he applied for a job for which he was qualified; (3) that his application was rejected; and (4) that the employer continued to seek other applicants of equal qualification. *McDonnell-Douglas* further held that, once a complainant establishes those four elements, the burden shifts to the *employer* to justify his employee selection on the basis of job-related criteria that are necessary for the safety and efficiency of the enterprise. The foregoing principles of *McDonnell-Douglas* were reiterated by the Pennsylvania Supreme Court in *General Electric Corp. v. Pennsylvania Human Relations Commission*, 469 Pa. 292, 365 A.2d 649 (1976).

Regarding *McDonnell-Douglas*, the trial court's opinion in the instant case presents a striking feature: In the process of reversing the Commission on evidentiary grounds, the trial court concluded that Booker *had established* a prima facie case under *McDonnell-Douglas*, and that he thus had shifted the burden of proof to Central. If the trial court was correct in

deciding that Booker had made out a prima facie case under *McDonnell-Douglas*, then it was inconsistent for the court to conclude that the Commission's order was not supported by substantial evidence. That is, if the complainant established a prima facie case of discrimination, then it became Central's burden to justify its employee selection; and it was within the Commission's province as fact-finder to reject the credibility of the purported justification advanced by Central.[4]

Yet, given the record in the instant case, there can be some question as to whether the complainant actually satisfied the fourth "prong" of *McDonnell-Douglas*, *i.e.*, that the employer continued to seek other equally qualified applicants after rejecting the complainant. Here, there is no clear evidence that the rejection of Booker preceded a continuing search by Central for other applicants. However, the absence of such proof is not necessarily fatal to a complainant's case. Both the United States Supreme Court in *McDonnell-Douglas*, and the Pennsylvania Supreme Court in *General Electric*, expressly noted that the "four-prong" test is not a fixed absolute that applies in all respects to all circumstances.[5] If proof of the fourth "prong" were, in all circumstances, a *sine qua non* of a discrimination case, an employer could easily escape the consequences of even the most blatant discrimination by simply delaying the overt rejection of the complainant until after a discriminatory selection from among the competing job-applicants had already been made. To allow such a result would, as a practical

---

[4] The trial court, in its opinion, also stated that Central had met its burden of proof.

[5] *McDonnell-Douglas*, 411 U.S. at 802 n.13; *General Electric*, 469 Pa. at 304 n.11, 365 A.2d at 656 n.11.

matter, nullify one of the cardinal purposes of the Pennsylvania Human Relations Act.[6]

With respect to the matter at bar, a more compelling decisional guide is the case of *Luzerne Community College v. Pennsylvania Human Relations Commission*, 33 Pa. Commonwealth Ct. 121, 381 A.2d 201 (1977). That case involved a complaint of sex discrimination. We held that since the Commission found, on substantial evidence, that the female complainant was better qualified than the male who got the job in question, and found that the employer's justification for not hiring the complainant was unpersuasive or pretextual, then the Commission's conclusion of unlawful discrimination was warranted. We also observed, in *Luzerne County Community College*, that statistics indicating an imbalance of minority individuals in an employer's work force are acceptable evidence to support a complaint of discrimination. *Id.* at 127, 381 A.2d at 204.

Although the *Luzerne County Community College* case was under Section 5(a) of the state Human Relations Act,[7] and the instant case was under the Pittsburgh Human Relations ordinance, there is no sound reason why a violation of the former would not also come within the substantive compass of the latter. In other words, evidence sufficient to prove unlawful discrimination under Section 5(a) of the state Act

---

[6] Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§951 *et seq.*

[7] 43 P.S. §955(a). Section 5 of that Act provides in part as follows:

> It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification...:
>
> (a) For any employer because of the race, color ... sex ... of any individual to refuse to hire or employ ... such individual ... if the individual is the *best able and most competent to perform the services required.* (Emphasis added.)

would also be sufficient to prove a case under Pittsburgh's ordinance.

As noted, the Pittsburgh Human Relations Commission concluded that complainant Booker was more qualified than Mr. Stuckert. That was a question of fact for the Commission to decide, and we must sustain that finding if it was supported by substantial evidence. *General Electric Corp.* A comparison of the two men's job experiences and their job applications generates, at the very least, an issue about which reasonable minds might disagree. Accordingly, it cannot be said that there was not substantial evidence to support the Commission's determination about the qualifications of the two men.[8]

The sole justification advanced by Central for not hiring Booker was the allegation about the marijuana incident. As we have pointed out, the Commission rejected the employer's evidence in that regard as being "vague and unconvincing." In our view, that characterization must be given a broader reading than the trial court gave it. The Commission did not simply doubt the visual accuracy of Mr. Tobias' alleged observation of a marijuana incident. Rather, the Commission rejected the credibility of the entire allegation.

Additional evidentiary support for the Commission's finding of discrimination is found in Central's admission that it had only one black driver on a staff of twelve drivers at the time Booker applied for the job. Although supervisor Tobias indicated that he, at one time, had been a driver, there is no evidence to indicate that Central ever had more than one black driver at any given time prior to Booker's application.

For the reasons set forth in this opinion, we must reverse the order of the trial court in this case. In

---

[8] Given the record before us, it cannot be said that Central even asserted that Mark Stuckert had superior qualifications.

passing, however, we must mention one other consideration. The Commission awarded Duwayne Booker back pay to December 28, 1977. Yet, the Commission found that the job in question did not become actually vacant until February of 1978. To that extent, there is an inconsistency in the Commission's order; and for the limited purpose of reconciling that inconsistency we must remand this case.

ORDER

AND NOW, the 5th day of July, 1983, the order of the Court of Common Pleas of Allegheny Counnty dated October 17, 1980, at No. SA 620 of 1979, is reversed. However, the above-named appellant is hereby directed to reconcile the apparent inconsistency between the adjudged beginning date of back-pay accrual, and the finding as to the date the employment in question became actually available. For that limited purpose, this case is remanded to the trial court, with an instruction to further remand the matter to the appellant.

———

DISSENTING OPINION BY JUDGE BLATT:
I respectfully dissent.
Based on the record developed before the Commission, I believe that the employer clearly met its burden of proving that the complainant was not the most qualified applicant. The individual hired (Stuckert) had been a prior applicant, and, when he was rejected the first time, the interviewing supervisor noted on his application that "he would like to consider [him] in next opening." Stuckert also had experience in the handling and repair of motor vehicles. As the dissenting opinion of Commissioner Farino stated, "[t]here is

no evidence that the person hired was less qualified." Moreover, Ms. Farino also indicated that the supervisor who did the hiring and firing was also black, "an additional fact the Commission report fails to note."

In light of the above, I would hold that the employer met its burden of offering a legitimate, nondiscriminatory reason for rejecting the complainant's application, and I would affirm the trial court.[1]

---

[1] I would also note that I disagree with the majority's use of *Luzerne Community College v. Pennsylvania Human Relations Commission*, 33 Pa. Commonwealth Ct. 121, 381 A.2d 201 (1977), not because I have any doubts about the wisdom of the rule cited therein, but because the statistics offered here are in no way indicative of discrimination. Without additional statistics relating to the number of applicants and their races and the racial make-up of the area's labor market, I do not believe that the fact that the employer had only one black driver on a staff of 12 at the time of the application, is probative on the issue of discrimination. *See Hazlewood School District v. United States*, 433 U.S. 299 (1977).