Harrisburg School District et al., Petitioners *v.* Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission, Respondent.

Argued September 15, 1983, before Judges CRAIG, BARRY and BLATT, sitting as a panel of three.

*Judy S. Smith*, with her *William T. Smith, Smith and Smith, P.C.*, for petitioners.

*G. Thompson Bell*, Assistant General Counsel, for respondent.

OPINION BY JUDGE CRAIG, October 18, 1983:

The Harrisburg School District, its superintendent, and its acting director for special education (school district) appeal from a decision and order by the Pennsylvania Human Relations Commission, which found that, in violation of section 5(a) of the Pennsylvania Human Relations Act (Act),[1] the school

[1] Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§951-962.2.

district had discriminated against Linda Portlock, a black woman, because of her race and sex, by failing to interview or hire her for the position of Instructional Supervisor of Special Education (ISSE position).

We must decide if the commission committed an error of law in its allocation of the burden of proof and if there is substantial evidence to support its findings of discrimination. *See Harmony Volunteer Fire Co. and Relief Association v. Pennsylvania Human Relations Commission*, 73 Pa. Commonwealth Ct. 596, 459 A.2d 439 (1983) (court must affirm commission adjudication unless commission violated constitutional rights, made findings of fact not supported by substantial evidence or committed an error of law).

## Factual Background

In 1977, the school district had posted a vacancy notice for the ISSE position; at that time, John Tommasini, a white male, and Gail Edwards, a black female, had applied, and were interviewed for the position by three school district officials then in office, the former superintendent, the former director of special education, and the former director of curriculum. Apparently, because of insufficient funding, the school district did not fill the vacancy for the 1978 academic year.

In April of 1978, the school district again posted a vacancy notice for the ISSE position, listing the following qualification prerequisites:

1. Master's Degree in Special Education;

2. Pennsylvania certification in at least one major discipline of Special Education;

3. Pennsylvania certification as a Supervisor in Special Education;

4. Commitment to the education of exceptional children.

As an addendum, the vacancy notice also listed the National Teachers Examination as a requirement for the position.

Mrs. Portlock applied for the position in that April and took the National Teachers Examination in May. Mr. Tommasini and Ms. Edwards apparently did not formally resubmit applications for the ISSE position in 1978; the school district, however, treated them as candidates.

Without conducting personal interviews for the ISSE position in 1978, and without ever interviewing Mrs. Portlock, the school district selected Mr. Tommasini on the recommendation of Ron Keller, the current acting director of special education. After learning from Mr. Keller in July of 1979 that she had not been selected, Mrs. Portlock filed her complaint with the commission.[2]

### Burden of Proof

In *General Electric Corp. v. Pennsylvania Human Relations Commission*, 469 Pa. 292, 365 A.2d 649 (1976), our Supreme Court adopted as one touchstone, for discrimination proof, the four-prong test of *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973), which provides that, for a complainant to establish a prima facie case of employment discrimination, he must show that: (1) he is a member of a protected minority, (2) he applied for a job for which he was qualified, (3) he was rejected, and (4) the employer continued to seek applicants of equal qualifications. At this point, the complainant will have cre-

---

[2] The commission originally dismissed Mrs. Portlock's complaint for lack of jurisdiction on the ground that the Capital Area Intermediate Unit, and not the school district, funds the ISSE position. On petition for reconsideration, however, the commission determined that the school district is indeed the employer here. The school district now stipulates that fact.

ated a rebuttable presumption that the employer engaged in unlawful discrimination. *Department of Community Affairs v. Burdine,* 450 U.S. 248 (1981); *Winn v. Trans World Airlines, Inc.,* 75 Pa. Commonwealth Ct. 366, 371, 462 A.2d 301, 304 (1983).

The duty to come forward with evidence then shifts to the employer to provide proof of a legitimate, nondiscriminatory reason for not hiring the complainant. *Burdine,* 450 U.S. at 254; *Winn,* 75 Pa. Commonwealth Ct. at 371, 462 A.2d at 304. Section 5(a) of Pennsylvania's Act expressly imposes a more specific burden upon an employer, however, by requiring a demonstration that the disappointed applicant was not best qualified.[3] *General Electric,* 469 Pa. at 302, 365 A.2d at 657; *accord, Blackburn v. Pennsylvania Human Relations Commission,* 62 Pa. Commonwealth Ct. 171, 173, 435 A.2d 671, 672 (1981). Only then does the production duty again shift to the plaintiff for a full and fair opportunity to demonstrate pretext. *Burdine,* 450 U.S. at 256-57.[4] Of course, the complainant at all times

---

[3] Section 5(a) provides, in pertinent part:

It shall be an unlawful discriminatory practice

. . . .

(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability of any individual to refuse to hire or employ, or to bar or to discharge from employment such individual, or to otherwise discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment, *if the individual is the best able and most competent to perform the services required.* (Emphasis added.)

[4] In *Burdine,* the U.S. Supreme Court rejected a Fifth Circuit Court of Appeals' interpretation of Title VII that would have required the employer, as part of his production burden, to prove by objective evidence that the person hired or promoted was more qualified than the disappointed applicant for the job. 450 U.S. at 258-59. Noting that Title VII does not require an employer to give

retains the burden of persuasion on the ultimate issue of whether the employer had a discriminatory motive. *Winn,* 75 Pa. Commonwealth Ct. at 372, 462 A.2d at 304.

The school district contends that we are bound by the U.S. Supreme Court's interpretation of Title VII in *Burdine,* and therefore must conclude that the commission erred by requiring the school district to proffer anything more than a legitimate, nondiscriminatory reason for hiring Mr. Tommasini instead of Mrs. Portlock. We disagree.

Our statute expressly requires more of the employer. Moreover, in *Anderson v. Upper Bucks County Area Vocational Technical School,* we held that the U.S. Supreme Court's construction of Title VII does not require our court to construe the Pennsylvania Human Relations Act in the same fashion. 30 Pa. Commonwealth Ct. 103, 373 A.2d 126, 129 (1977).

### Prima Facie Case

The school district contends that Mrs. Portlock was not qualified for the ISSE position under the second prong of *McDonnell-Douglas* because she had not taken the National Teachers Examination before she submitted her application. The commission, however, found that Mrs. Portlock possessed all necessary degrees and certification for the ISSE position, having taken the exam in May of 1978, before the Harrisburg school board voted on June 26 to name Mr. Tommasini to the post.

All parties agree that Mr. Keller had primary responsibility for evaluating the ISSE candiates. Yet,

---

preferential treatment to minorities or women, the Supreme Court reasoned that the fifth circuit test would have required an employer to hire the minority or female applicant whenever that person's objective qualifications were equal to those of a white male applicant. 450 U.S. at 259.

his testimony reveals that, when he considered Mrs. Portlock's credentials, neither he nor any of the other respondents rejected her application on the ground that she sat for the exam only after submitting her application. Indeed, it appears that, when Mr. Keller considered Mrs. Portlock's application sometime in June,[5] he operated under the correct assumption that, by then, she had taken the exam. The school district cites no Pennsylvania authority that requires us to disturb the commission's reasonable conclusion that, under the circumstances, Mrs. Portlock was qualified, having acquired the necessary degrees and certification by the time her application received active consideration.

The school district also contends that, under the fourth prong of *McDonnell-Douglas,* Mrs. Portlock failed to establish her prima facie case because, after the school district rejected her application, it did not seek other equally qualified candidates. Noting that the four prong test of *McDonnell-Douglas* is not a fixed absolute that applies in all respects to all circumstances, we recently rejected a similar argument in *Pittsburgh Commission on Human Relations v. Central Blood Bank of Pittsburgh,* 75 Pa. Commonwealth Ct. 376, 384, 462 A.2d 295, 299 (1983). There, we stated, "[i]f proof of the fourth 'prong' were, in all circumstances, a *sine qua non* of a discrimination case, an employer could easily escape the consequences of even the most blatant discrimination by simply delaying the overt rejection of the complainant until after a discriminatory selection from among the competing job-applicants had already been made. To allow such a result would, as a practical matter, nullify one of the

---

[5] Mrs. Portlock's testimony about the promise of an interview in June, *see* note 7 *infra,* indicates that Mr. Keller was still in the process of actively considering candidates at that time.

cardinal purposes of the ... Act." *Id.* at 384-385, 462 A.2d at 299. *See also Reed v. Miller Printing Equipment,* 75 Pa. Commonwealth Ct. 360, 364-365, 462 A.2d 292, 294 (1983).

Finally, the school district contends that it did not truly reject Mrs. Portlock's application. Its choice of Mr. Tommasini for the ISSE position, however, demonstrates otherwise.

Thus, Mrs. Portlock's case satisfied the criteria of *McDonnell-Douglas,* establishing an inference of discrimination.

## Employer's Justifications

At the commission hearing, Mrs. Portlock testified that she had two years' experience as a learning disability teacher and seven years' experience as a Master Itinerant, which she described as a liaison position between the director of special education and classroom teachers.[6] Mrs. Portlock also testified that she worked primarily in elementary schools and had a good working relationship with teachers.

Relying upon the testimony of Mr. Keller, who stated that Mrs. Portlock lacked supervisory skills, rapport with some teachers with whom she worked, and secondary education experience for the job, the school district contends that Mrs. Portlock was not the best able or most competent ISSE candidate.

The commission, however, observed that Mrs. Portlock, as a Master Itinerant, performed many of the supervisory duties of an ISSE and that the school district never listed secondary education experience as

---

[6] Mrs. Portlock also testified that as a Master Itinerant, she was responsible for administering diagnostic testing and interpreting the results, providing educational assessments and evaluations of students, assisting teachers in the selection of materials, and conducting and participating in in-service workshop training for teachers.

a prerequisite for the job. There is substantial evidence of record to support both findings. *Harmony Volunteer Fire Co.*, 73 Pa. Commonwealth Ct. at 598-599, 459 A.2d at 441.

Although the commission made no findings on the question of Mrs. Portlock's rapport with teachers, we can infer that it found her testimony more convincing than the testimony of Mr. Keller. Indeed, the commission found that, in response to a subpoena, the school district had altered the records of Gail Edwards to bolster its case; the commission therefore concluded that the testimony of school district witnesses was generally not credible. Questions of credibility and the weight of evidence are for the commission to decide. *Id.* at 606, 459 A.2d at 444.

Finally, the school district contends that it had a legitimate, nondiscriminatory reason for failing to interview Mrs. Portlock, claiming that it (1) had no obligation to do so under the local union contract or (2) had no reason to do so, because of Mr. Keller's familiarity with all three candidates. In the discussion portion of its opinion, however, the commission found that (1) the school district believed interviews were necessary, regardless of the contract's terms, and that (2) the school district offered no credible basis for interviewing Mr. Tommasini and Ms. Edwards, but not Mrs. Portlock.[7] There is ample testimony of record to support those findings; we will not disturb them on appeal. *Harmony Volunteer Fire Co.*

Even if the school district had succeeded in rebutting the inference of discrimination established by Mrs. Portlock's prima facie case, there is evidence to

---

[7] Mrs. Portlock testified that Mr. Keller told her in June of 1978 that he would be interviewing candidates for the ISSE position. When asked why he had not interviewed Mrs. Portlock, Mr. Keller responded that it was an oversight.

suggest that the school district's allegedly legitimate, nondiscriminatory justifications were merely pretextual. As Mr. Keller testified:

Q. So, were there any other matters that you considered in making your decision?

A. Probably the biggest consideration from a personal standpoint, this is the type of a job that I have that requires a person that I can feel very comfortable with.

It is a job that requires working very closely with one another and thinking the same way about many critical issues.

While I don't doubt Mrs. Portlock's expertise in many areas, I don't feel that we would have made a compatible team.

I don't know how I can substantiate that other than that is a gut feeling that I had at that time.

The use of subjective criteria is not a per se violation of anti-discrimination laws, but courts generally treat employment decisions predicated on subjective appraisals with particular suspicion. *General Electric,* 469 Pa. at 307 n. 14, 365 A.2d at 657. Section 5(a) entitles every black female job applicant to have her qualifications for employment considered on an equal footing with those of a white male. *Id.* at 307, 365 A.2d at 660. By failing to afford Mrs. Portlock an interview, by failing to establish that she was not best qualified, by Mr. Keller's "gut reaction" to her qualifications, and by other evidence of record, the school board has demonstrated that it manifestly deprived her of this entitlement.

Recognizing that discrimination is seldom explicit, but must be discerned from many circumstances, *Pennsylvania Human Relations Commission v. Chester School District,* 427 Pa. 157, 172, 233 A.2d 290, 298 (1967), we affirm.

## ORDER

Now, October 18, 1983, the order of the Pennsylvania Human Relations Commission, dated February 23, 1982, is affirmed.