528 A.2d 1036

Tesco Tank Center, Inc., Petitioner *v.* Workmen's Compensation Appeal Board (Zmarzley, Jr.)

Argued April 23, 1987; before Judges DOYLE and BARRY, and Senior Judge BARBIERI, sitting as a panel of three.

*Michael P. Shay, Shay & Santee,* for petitioner.

*Wilbur C. Creveling, Jr., Creveling & Creveling,* for respondent.

OPINION BY JUDGE DOYLE, July 20, 1987:

This is an appeal by Tesco Tank Center, Inc. (Employer) from an order of the Workmen's Compensation Appeal Board (Board) which affirmed a determination of a referee granting benefits for the specific loss of an eye to Victor Zmarzley, Jr., (Claimant).

The factual findings are undisputed. Claimant was employed by Employer on September 24, 1981 when a work-related injury occurred. Specifically, a foreign object penetrated Claimant's left eye. On September 24, Claimant was hospitalized in Bethlehem, Pennsylvania for the injury. He was subsequently taken to Wills Eye Hospital (Wills) in Philadelphia for surgery and repair of the wound and the removal of the foreign object. A few days later Claimant developed a traumatic cataract

which was removed in surgery at Wills. Claimant's uncorrected vision since his surgery is less than the level of legal blindness, but with a corrective lens his vision is 20/20, and, apparently, he has binocular vision when the corrective lens is worn.

The referee granted Claimant benefits for the specific loss of an eye, and the Board affirmed. Employer's petition to this Court ensued.

This Court has previously set forth the relevant legal inquiry for determining whether a claimant has incurred the specific loss of an eye. We said in *Hershey Estates v. Workmen's Compensation Appeal Board*, 9 Pa. Commonwealth Ct. 470, 308 A.2d 637 (1973):

> The standard to be applied in the determination of whether compensation for the specific loss of the use of an eye is due, where the eye has been injured but not entirely destroyed, has been the subject of numerous and lengthy opinions. . . . The ultimate test finally arrived at, after much travail, is that of whether the injured eye was lost for all practical intents and purposes, not whether claimant in fact has vision in the injured eye. In facilitation of the application of the ultimate test, a further standard has been adopted: Compensation may not be had if, using both eyes, the claimant can see better, in general, than by using the uninjured eye alone . . . or, as otherwise stated, there may be compensation if the use of the injured eye does not contribute materially to the claimant's vision in conjunction with the use of the normal eye. . . .

*Id*. at 473, 308 A.2d at 639 (citations omitted).

In the instant case, the referee determined, based upon medical evidence the competency and sufficiency of which is not challenged, that Claimant cannot see better using both eyes, without a corrective lens on the

injured eye, than he can see by using the uninjured eye alone, and that Claimant's use of the injured eye *without the corrective lens* does not materially contribute to Claimant's vision in connection with the use of his uninjured eye. As noted previously, Employer, who presented no medical evidence, does not contest these findings, nor the competency of Claimant's medical evidence. Instead, its contention on appeal is that the *Hershey Estates* standard, wherein the measurement for specific loss involves *uncorrected* vision, should be limited only to instances where, even with correction, a claimant does not regain binocular vision, and that our having extended the *Hershey Estates* uncorrected vision standard to cases where binocular vision is achieved with a corrective lens is in error. Employer relies upon, *inter alia,* language in *Shannon v. Turissini,* 190 Pa. Superior Ct. 522, 154 A.2d 310 (1959), wherein the Superior Court stated, "a claimant who has had a traumatic cataract removal *which cannot be corrected to produce binocular vision"* is entitled to specific loss compensation. *Id.* at 527, 154 A.2d at 312 (citing *Criner v. McKee Glass Co.,* 162 Pa. Superior Ct. 627, 60 A.2d 595 (1948)) (emphasis added).

Employer acknowledges, however, that, subsequent to *Shannon* and *Criner,* appellate courts have not distinguished between cases where binocularity is achieved through use of a corrective lens and those where it is not. *See e.g., Bauer v. Workmen's Compensation Appeal Board (Ram Construction Co.),* 102 Pa. Commonwealth Ct. 26, 517 A.2d 568 (1986) (where total binocular vision was the issue, the proper standard of measurement was the injured eye *as uncorrected);* *DeVore v. Atlantic Manufacturing Co.,* 208 Pa. Superior Ct. 224, 222 A.2d 431 (1966). Employer asks us to reject *DeVore* and *Bauer.* We decline to do so and hold instead that *Hershey Estates* is and continues to be the

applicable standard, even in cases where binocularity is achieved with the use of a corrective lens.

First, we note that the *Hershey Estates* standard has been the law of Pennsylvania at least since 1944, having been articulated by the Superior Court in *Diaz v. Jones & Laughlin Steel Corp.*, 155 Pa. Superior Ct. 177, 38 A.2d 387 (1944). That standard was adopted by this Court in *Hershey Estates*. Second, to allow use of what is essentially a prosthetic device to negate specific loss in eye injuries would open the door to employing such standards for other prosthetic devices such as hearing aids, artificial limbs, etc. We simply cannot believe that one who is forced to rely upon such an artificial device to replace that which nature has provided has not suffered a specific loss of that body part. This is clearly the case, here, inasmuch as the referee found that even with the corrective lens Claimant's vision is blurred; that if water gets into his eye it causes tears to flow; that he must lubricate the eye three times a day; that the lens flips out accidentally; that he has to switch his position to different angles in order to see properly; that he must wear bifocals to read in addition to the contact lens; that night driving tires him; that on-coming headlights bother him; and that he perceives three or four sets of headlights because of the glare.

While we acknowledge that the use of contact lenses is more common than other prosthetic devices, we, nonetheless, conclude that where a work-related injury creates the need for such a device to restore normal vision, the proper focus is and must remain upon the uncorrected eye. Any change in the law due to medical advancements should come from the legislature, not from this Court.[1]

---

[1] Our research has revealed that, in 1939, the legislature amended the law on disability resulting from permanent eye injuries by deleting language which specifically permitted compensa-

Finally, Employer asserts that the referee erred in awarding Claimant counsel fees. It argues that "[due] to the uncertainty of the law in this area and recent developments in the use of contact lenses" it should not be penalized for raising the substantive legal issue. Employer's brief, p. 18. We must first disagree that the law in this area is uncertain; to the contrary, we believe the *Hershey Estates* test is well-established law. Moreover, while we do not doubt Employer's sincerity in seeking reversal of a legal standard with which it disagrees and takes issue, we do not believe that, in instances where the law is clear, an employer should be permitted to challenge that law at the expense of a claimant. Indeed, if the rule were to the contrary, it would encourage litigation of well-established matters. We thus hold that where, as here, the law *is* well-settled and the employer has contested the matter solely to change the law, the contest is *per se* unreasonable under Section 440 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §996.[2] Accordingly, we hold that counsel fees were properly awarded to Claimant in this case.

---

tion for "the removal of a cataract from a lense of the eye, causing the loss of binocular vision" while leaving intact general language allowing compensation for the "loss of an eye." *See* Section 1 of the Act of June 21, 1939 P.L. 520. Additionally, that same amendment deleted the restrictive requirement that permanent loss of the use of an eye be limited to use of the eye for "industrial purposes." *Id.; see also Diaz.*

When these legislative changes are considered *in pari materia,* it is apparent that the legislative intent is, at best, ambiguous on whether the goal was to broaden the types of eye injuries viewed as compensable under the specific loss provision by using only the "loss of an eye" language, or to restrict compensability by deleting the "removal of a cataract" language.

[2] Section 440 was added by Section 3 of the Act of February 8, 1972, P.L. 25.

Based upon the foregoing discussion, the order of the Board is affirmed.

ORDER

Now, July 20, 1987, the order of the Workmen's Compensation Appeal Board in the above captioned matter is hereby affirmed.