555 A.2d 193

William LESSNER

v.

Birdie L. RUBINSON and First Pennsylvania Bank.

Appeal of William LESSNER, by his Executor, Herbert PRESSMAN, Esquire.

Superior Court of Pennsylvania.

Argued Oct. 5, 1988.

Filed March 8, 1989.

Herbert Pressman, Philadelphia, for appellant.

Louis S. Criden, Philadelphia, for appellees.

Before CIRILLO, President Judge, and BROSKY, ROWLEY, WIEAND, McEWEN, DEL SOLE, MONTEMURO, BECK and TAMILIA, JJ.

ROWLEY, Judge:

This appeal challenges a final decree of the Court of Common Pleas of Philadelphia County, which ruled that a bank Certificate of Deposit ("C.D.") in the joint names of William Lessner (decedent) and Birdie L. Rubinson, his sister, is not an asset of the decedent's estate, but rather the property of Birdie L. Rubinson. The court also ruled that a $5,000 check given by William to Birdie was a gift and is not an asset of the estate. We affirm in part and reverse in part.

Our Court has held that the

findings of a trial judge in a non-jury case must be accorded the same weight and effect on appeal as the verdict of a jury, and will not be reversed in the absence of an abuse of discretion or a finding of a lack of evidentiary support. The appellate court, in these circumstances, is limited to determinations of whether the trial court's findings are supported by competent evidence and whether the trial court committed an error of law.

*Brenna v. Nationwide Insurance Co.*, 294 Pa.Super. 564, 567, 440 A.2d 609, 611 (1982) (citations omitted). With this standard of review in mind, we summarize the facts as found by the trial court.

On or about July 18, 1978, William Lessner and his sister, Birdie Rubinson went to the First Pennsylvania Bank ("the Bank") to obtain a Certificate of Deposit ("the replacement C.D.") to replace a $50,000 C.D. which William had owned with his wife, Anna.[1] The amount of the replacement C.D. was $50,000, it was made payable to "William Lessner or Birdie L. Rubinson", and it matured on April 1, 1979.

Upon maturity of the replacement C.D., a new C.D. ("the third C.D."), dated April 1, 1979, was issued,[2] also in the amount of $50,000 and for four years. This third C.D. was

1. Uncontradicted testimony established that Anna had died three months earlier. Anna and William had purchased the $50,000 C.D. on April 1, 1975. It had been issued for a term of four years.

2. The third C.D. was actually issued on April 2, 1979. April 1st was a Sunday.

issued in the name of "William Lessner or Birdie Rubinson," as well. The third C.D. is at the center of this dispute.

The trial court found as a fact that the third C.D. remained in the constant possession and control of Birdie from the time it was issued. The court also found that Birdie did not contribute any funds toward purchase of the C.D. It is uncontradicted that before the third C.D. was to mature on April 1, 1983, William requested that Birdie return it to him so that he could get a higher rate of interest elsewhere. Birdie refused. William brought this action in the Court of Common Pleas on March 31, 1983 seeking to enjoin Birdie from redeeming the third C.D.[3]

In addition to the $50,000 C.D., a check in the amount of $5,000 is at issue in this case. William alleged in Count II of his complaint that on July 1, 1982 Birdie requested that he loan her $5,000 so that, together with $5,000 of her own funds, she could purchase a $10,000 C.D. for herself. William alleged that he complied with her request, but never received repayment of the $5,000. The trial court made no specific findings of fact regarding the $5,000 in dispute except to note that William claimed the payment of $5,000 to Birdie was a loan.

William died on July 28, 1984 before the date of trial. William's executor was substituted as plaintiff upon filing a suggestion of death. Following a bench trial held in February 1986, the Honorable Calvin J. Wilson concluded that the C.D., as well as the $5,000 check, were gifts by William to his sister and, therefore, did not constitute any part of his estate. William's executor has appealed.

Appellant presents seven issues on appeal, which may be most efficiently distilled into two arguments: 1) that the trial court erred in not applying 20 Pa.C.S. § 6303(a) in deciding the issue of the ownership of the third C.D., and 2)

**3.** During the litigation, by agreement of the parties, the C.D. at issue was redeemed and the proceeds placed in a money market account. That transaction has no effect upon the legal rights or responsibilities of either party.

that the evidence was insufficient to support the trial court's decision.

## I.

■ First, William's executor argues that Chapter 63 of the Probate, Estates and Fiduciaries Code, 20 Pa.C.S., governs disposition of the matter, and that the trial court erred in not applying § 6303(a) of that Chapter to the case at bar.

Principally, counsel contends that the enactment by our legislature of § 6303(a) changed the prior law by creating a rebuttable presumption that parties who create a joint account do not by such act intend a beneficial change of ownership of the deposited funds. Thus, the executor argues, the act of obtaining the replacement C.D., as well as the third C.D., did not result in a gift to Birdie because William supplied all of the funds for the purchase and Birdie contributed nothing. Counsel contends that the trial court erred in not applying § 6303(a) to the facts in the case at bar.

The presumption under § 6303(a) is that during the lifetime of the parties, a joint account belongs to the party or parties who contributed the funds:

> (a) Joint account.—A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sum on deposit, *unless there is clear and convincing evidence of a different intent.* (Emphasis added.)

There can be no doubt that section 6303(a) is the statute under which this case must be decided because Mr. Lessner commenced the litigation while he was still living.[4]

Prior to the enactment of section 6303(a), efforts to ascertain the owner or owners of funds often resulted in a state of confusion. *See In re Estate of Cilvik,* 439 Pa. 522, 267 A.2d 836 (1970) ("involv[ing] the ownership of a joint

4. See *Fiduciary Review,* September, 1976, at 2. "[S]ection [6303] is limited to a description of ownership while the original parties are alive. No present change of beneficial ownership occurs and there is no presumption that an inter vivos gift was intended."

savings account opened under one of those perplexing and vexing bank signature cards"); *see also In re Estate of Bowser*, 470 Pa. 154, 367 A.2d 1088 (1977); Hollinger, "Annual Survey of Pennsylvania Legal Developments in the Law—Decedents' Estates and Trust Laws," 48 Pa.B.A.Q. 406, 408. Decisions in such cases often turned on "the exact wording of the deposit account and the signature card and the agreement, if any, accompanying it." *In re Estate of Bunn*, 413 Pa. 467, 469, 198 A.2d 518, 519 (1964). Our Supreme Court, however, has noted that the enactment of Chapter 63 of the Probate, Estates and Fiduciaries Code, 20 Pa.C.S. §§ 6301–6306, "alters and simplifies in several significant respects the law of this Commonwealth applicable to joint interests in bank accounts." *In re Estate of Young*, 480 Pa. 580, 584 n. 3, 391 A.2d 1037, 1039 n. 3 (1978); *see also In re Estate of Pitone*, 489 Pa. 60, 413 A.2d 1012 (1980).

Section 6303 is explained in the official comment thereto:

This section reflects the assumption that a person who deposits funds in a multiple-party account normally does not intend to make an irrevocable gift of all or any part of the funds represented by the deposit. Rather, he usually intends no present change of beneficial ownership. *The assumption may be disproved by proof than (sic) a gift was intended.* (Emphasis added.)

The trial court found as a fact that Birdie did not contribute any of the funds toward the C.D., and the record supports this finding.

■ William's executor claims that the trial court erred in not applying § 6303(a) to the case at bar. While the court did not specifically refer to the statute in its opinion, there can be no doubt that the court applied the principle of law set forth in § 6303(a). The court concluded "it is the burden of Birdie L. Rubinson to establish the existence of a gift inter vivos by clear, precise, direct and convincing evidence." This language achieves the same result as does an application of § 6303(a). Thus, we find no error in the

principle of law or burden of proof applied by the trial court.

## II.

■ Having found that the proper standard was applied by the trial court, we next address the argument of William's executor that the evidence proffered by Birdie and admitted at trial was not sufficient to establish that William intended the $50,000 C.D. and the $5,000 check to be gifts inter vivos. We agree that the evidence regarding the $50,000 C.D. was insufficient to prove a gift inter vivos.

Section 6303(a) requires the presentation of "clear and convincing" evidence to establish a gift. Our Supreme Court has set forth the standard for "clear and convincing" evidence:

[T]he witnesses must be found to be credible, that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order, and that their testimony is so clear, direct, weighty, and convincing as to enable the jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.

*In re Estate of Fickert,* 461 Pa. 653, 658, 337 A.2d 592, 594 (1975), *quoting La Rocca Trust,* 411 Pa. 633, 640, 192 A.2d 409, 413 (1963).

■ Two elements must be shown in order to establish a valid inter vivos gift. First, there must be an intention to make an *immediate* gift. Second, there must be actual or constructive delivery to the donee such as will divest the donor of dominion and control of the subject matter of the gift. *Ashley v. Ashley,* 482 Pa. 228, 393 A.2d 637 (1978); *Livingston v. Livingston,* 275 Pa.Super. 285, 418 A.2d 724 (1980).

There is no dispute that the second element, actual delivery, was met in this case.[5] Indeed, suit was brought

5. *But see In re Kata's Estate,* 363 Pa. 539, 70 A.2d 351 (1950) ("the mere handing of a bank book, even though accompanied by words

precisely because Birdie had the third C.D. in her possession. We must determine, therefore, whether Birdie proved by clear and convincing evidence William's *intention* to make an immediate gift.

It is well-settled that "[d]onative intent is one of the essential elements of a completed inter vivos gift." *In re Estate of Gladowski*, 483 Pa. 258, 262, 396 A.2d 631, 633 (1979). Prior to the enactment of Chapter 63, "the creation of a joint interest in a bank account with rights of survivorship, evidenced by the signatures of both parties, [was] *prima facie* evidence of the *intent* of the party funding the account to make an inter vivos gift to the other joint tenant." *Id.* (emphasis added); *accord In re Estate of Young*, 480 Pa. 580, 391 A.2d 1037 (1978); *In re Estate of Keeney*, 465 Pa. 45, 348 A.2d 108 (1975); *In re Estate of Scott*, 455 Pa. 429, 316 A.2d 883 (1974); *see also In re Estate of Dzierski*, 449 Pa. 285, 296 A.2d 716 (1972) ("where a sole owner of a bank account converts the account into a joint one owned by himself and another, as evidenced by a duly signed signature card, the transaction is *prima facie* one of an inter vivos gift").

Conversely, when a bank account was opened with the donor's own money and the effect of the language used was to confer upon the donee only the right to withdraw the money, i.e. a convenience account,[6] there was no *inter vivos* gift. *In re Elliott's Estate*, 378 Pa. 495, 106 A.2d 453 (1954); *Chadrow v. Kellman*, 378 Pa. 237, 106 A.2d 594 (1954); *In re Kata's Estate*, 363 Pa. 539, 70 A.2d 351 (1950).

As our Supreme Court has noted, the law regarding joint accounts has been simplified by Chapter 63. To reiterate, our legislature has provided through § 6303(a) that while all

showing an intention to make a gift of the bank account is not sufficient delivery to constitute a gift of that account").

6. "In a 'convenience account,' although the depositor permits another to withdraw funds from the account, he authorizes and/or intends that such withdrawals be exclusively for his benefit and at his request." *In re Estate of Bowser*, 485 Pa. 209, 214 n. 4, 401 A.2d 733, 735 n. 4 (1979) (citations omitted).

parties to a joint account[7] are living, the account belongs to the person who contributed the money, unless a different intent is proven by clear and convincing evidence. Counsel for Birdie asserts that evidence of William's actions on the day the replacement C.D. was obtained from the bank clearly and convincingly proves William's intent to make an immediate gift of the C.D. to Birdie.

Counsel points to the following evidence in support of his argument. Birdie testified that on the day she accompanied William to the Bank, he handed the first C.D. (the one in William's and Anna's names) to the bank clerk. The clerk put "William Lessner or Birdie Businson (sic)" on the replacement C.D. and handed it to William, who in turn handed it to Birdie. N.T. 2/27/86 at 22. As William handed the C.D. to Birdie, he purportedly said "this is yours."

In support of his position, counsel for Birdie places great weight on *In re Estate of Chiara*, 467 Pa. 586, 359 A.2d 756 (1976). In that case our Supreme Court was called upon to determine whether a valid gift had been made by a mother to her son when she gave him a $16,000 cashier's check with which to purchase a C.D. and the C.D. was made out in the name of "Mrs. Constance Chiara or Joseph E. Chiara." The Court held

> [t]he requirement of donative intent was sufficiently proved through Joseph's uncontradicted testimony that he was told by his mother when she gave him the money with which to purchase the certificates that he was to "keep it for myself."

*Id.*, 467 Pa. at 591–92, 359 A.2d at 759 (footnote omitted). We find that Birdie's reliance upon *Chiara* is misplaced. In the case at bar, the statement "this is yours" was struck from the record by the trial court. N.T. 2/27/86 at 23.[8]

7. Significantly, "joint account" is defined as "an account payable on request to one or more of two or more parties *whether or not mention is made of any right of survivorshp.*" 20 Pa.C.S. § 6301 (emphasis added).

8. Thus, the record before us shows *only* that William handed the C.D. to Birdie.

Because we are precluded from considering any testimony not of record, *Chiara* is inapplicable to the case at bar. *McAllonis v. Pryor*, 301 Pa.Super. 473, 448 A.2d 5 (1982) ("an appellate court cannot consider anything which is not part of the record in the case").

Counsel for Birdie also directs our attention to deposition testimony by William stating that he intended to leave everything to Birdie upon his death. William testified:

shortly after my wife's death the Certificate matured. I was going to leave everything to Birdie.... That meant everything, the furniture, jewelry, the two fur coats and jewelry (sic). It was to be given to her. She was the only one who was not married. Through the years I took care of her financially.... She is going to get it.... I didn't know whether, how long I am going to live, or am I supposed to die before my wife. I have a bad heart, a pacemaker. I have diabetes; I have a little bit of everything.

N.T. 2/25/86 at 25–26. This testimony does not clearly and convincingly establish William's intent to make an *immediate* gift at the time he handed the C.D. to Birdie. At most, it shows an intent to leave his estate to her in the future, i.e., at his death.

In addition to the evidence already discussed, other evidence in the record indicates that an immediate gift to Birdie was not contemplated by William. Exhibit D–1, a photocopy of the replacement C.D., shows that the certificate was signed *only* by William Lessner at the time of its redemption on April 1, 1979. If William had intended an immediate gift to Birdie on July 18, 1978, of the replacement C.D., as her counsel contends, one would have expected to find her endorsement on the C.D., and not that of William. Further, William and Birdie each testified that William received all of the regular interest payments from both the replacement C.D. and the third C.D. N.T. 2/25/86 at 27 and 2/27/86 at 51. Thus, we hold that Birdie Rubinson has failed to prove by clear and convincing evidence

that an inter vivos gift of $50,000 was made to her by William, either on July 18, 1978 or on April 1, 1979.

 The matter of the $5,000 check given by William to Birdie on December 29, 1978, remains. William's executor contends that the check was a loan rather than a gift. The burden of proof, as to this contention, is on the executor. The trial court held, without discussion, that the $5,000 check was a gift. We have reviewed William's deposition testimony concerning the $5,000 check, as well as the testimony of Birdie, and we find no basis on which to overturn the trial court's holding that the check was not a loan. William testified that Birdie requested that he lend her $5,000 so that she could add it to $5,000 of her own money in order to purchase a $10,000 bond. N.T. 2/25/86 at 29. Birdie testified that she purchased a $10,000 C.D. around that time. N.T. 2/27/86 at 73. However, Birdie testified that she cashed the $5,000 check, Exhibit P–12, at William's request and gave the cash proceeds to William so that he could supply a nephew with $5,000 with which to open a used car business. The question of whether the $5,000 was used by Birdie to purchase her C.D., or was delivered to William's nephew per William's instructions, was obviously a question of credibility for the trier of fact. Since there is evidentiary support for the trial court's conclusion that the $5,000 was not a loan to Birdie, we may not disturb that finding.

For the foregoing reasons we affirm the judgment of the trial court as to the $5,000 check, but reverse as to the $50,000 certificate of deposit.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.