564 A.2d 485

**Frank McCLOSKEY, Appellee,**

v.

**NU–CAR CARRIERS, INC., Appellant.**

Superior Court of Pennsylvania.

Argued March 30, 1989.

Filed Aug. 23, 1989.

Reargument Denied Oct. 20, 1989.

Gerri L. Sperling, Pittsburgh, for appellant.

Timothy P. O'Reilly, Pittsburgh, for appellee.

Before WIEAND, DEL SOLE and MELINSON, JJ.

WIEAND, Judge:

The issue in this appeal is whether a laborer whose left eye has been injured in an accident but whose vision therein is correctable to 20/40 by lenses is a handicapped person for purposes of applying the Pennsylvania Human Relations Act of October 27, 1955, P.L. 744, as amended, 43 P.S. § 951 et seq.

Frank McCloskey was employed as a yardman by Automobile Transport, Inc. (ATI) for eleven years at ATI's terminal in Pittsburgh. McCloskey's duties required that he inspect and unload new automobiles which arrived by train or tractor-trailer and drive them to designated area automobile dealers. In 1972, McCloskey was injured when a steel splinter became lodged in his left eye, requiring several surgical procedures. These procedures were successful, however, and the vision in McCloskey's left eye was restored to 20/40 with the aid of a contact lens and eyeglasses. McCloskey returned to work after an absence of less than six months and resumed his duties as a yardman.

In April, 1979, Ford Motor Company terminated its relationship with ATI and engaged Nu–Car Carriers, Inc. (Nu–Car) to transport its vehicles to the local dealerships. Although Nu–Car took over the ATI terminal, it was not required to hire any of the former ATI employees. Nevertheless, it agreed to accept applications for employment from former ATI employees, and fourteen former ATI yardmen applied, including McCloskey. When interviewed, McCloskey was asked, inter alia, about his length of service with ATI, his driver's license, and his workmen's compensation history. McCloskey explained that he had received workmen's compensation benefits for his eye injury and also for an earlier knee injury. McCloskey held a valid driver's license and had passed a physical examination which certified that he was not prevented physically from performing the duties of employment as a yardman.

Of the fourteen ATI yardmen who applied for employment by Nu–Car, eight were hired. Four additional persons were hired from ATI's pool of casual employees to replace yardmen who were not hired. McCloskey was not hired. Nu–Car's evidence was that he had been reported to be part of a group of employees who were unproductive. McCloskey also had a record of absenteeism and was reported to have had a poor attitude.

McCloskey filed a complaint with the National Labor Relations Board, alleging that Nu–Car's refusal to hire him

had been in retaliation for the workmen's compensation claims which he had made during his employment by ATI. He also filed a complaint with the Pennsylvania Human Relations Commission in which he alleged unlawful discrimination in Nu–Car's refusal to hire him. Both claims were denied. McCloskey then filed an action in the Court of Common Pleas of Allegheny County in which he renewed his claims.

Trial without jury was held in December, 1983, but a decision was not rendered until March 30, 1987. The trial court rejected McCloskey's claim that he had been discriminated against because of prior workmen's compensation claims.[1] The court also found, however, that McCloskey had been a "handicapped person" for purposes of applying the Human Relations Act and that Nu–Car's refusal to hire him had not been grounded on legitimate business concerns.[2] Post-trial motions were heard and denied by another judge, who, on September 2, 1988, entered a final decree awarding McCloskey compensatory damages of $33,689.40 and punitive damages in like amount. The court also ordered that McCloskey be given the same grievance rights under the collective bargaining agreement which were enjoyed by other persons hired on May 26, 1979.[3] Nu–Car appealed.

Appellate review of equity matters is generally limited to a determination of whether the trial court committed an error of law or abused its discretion. *Hostetler v. Hoover*, 378 Pa.Super. 1, 6, 547 A.2d 1247, 1250 (1988); *Yoho v. Stack*, 373 Pa.Super. 77, 80, 540 A.2d 307, 309 (1988); *Rosen v. Rittenhouse Towers*, 334 Pa.Super. 124, 129, 482 A.2d 1113, 1116 (1984). Findings of fact made by a trial court sitting in equity are binding on appeal if supported by

1. Among those hired by Nu–Car was a person who had filed more workmen's compensation claims than McCloskey had filed.

2. The trial court rejected similar claims made by a co-plaintiff, Edward Runski, and no appeal was filed from that determination.

3. After it had operated the Pittsburgh yard for less than a year, Nu–Car was forced to turn over operation of the yard to a competitor, thus making full reinstatement by Nu–Car impossible.

substantial evidence. *Yoho v. Stack, supra.* See also: *Lessner v. Rubinson,* 382 Pa.Super. 306, 555 A.2d 193 (1989).

Section 5 of the Pennsylvania Human Relations Act, 43 P.S. § 955, provides that "[i]t shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification ... (b) [f]or any employer, employment agency or labor organization, prior to the employment or admission to membership, to: ... (5) [d]eny employment because of a prior handicap or disability."

In actions brought pursuant to the Act, as in Title VII discrimination cases, a complainant makes out a prima facie case of discrimination if he establishes that: (1) he is a member of a protected minority; (2) he applied for a job for which he was qualified; (3) his application was rejected; and (4) the employer continued thereafter to seek other applicants of equal qualification. See: *Pennsylvania Department of Transportation v. Pennsylvania Human Relations Commission,* 510 Pa. 401, 410, 508 A.2d 1187, 1191 (1986) (concurring opinion by Papadakos, J.); *General Electric Corp. v. Pennsylvania Human Relations Commission,* 469 Pa. 292, 304, 365 A.2d 649, 655–656 (1976). See also: *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Once the complainant establishes a prima facie case, the burden shifts to the employer to show a legitimate, nondiscriminatory reason for not hiring the complainant. See: *General Electric Corp. v. Pennsylvania Human Relations Commission, supra* at 305, 365 A.2d at 656; *Harrisburg School District v. Pennsylvania Human Relations Commission,* 77 Pa.Cmwlth. 594, 598, 466 A.2d 760, 762, (1983). "Only then does the production duty again shift to the plaintiff for a full and fair opportunity to demonstrate [the reason given is a] pretext.... Of course, the complainant at all times retains the burden of persuasion on the ultimate issue of whether the employer had a discriminatory motive." *Id.,* 77 Pa.Commonwealth at 598–599, 466 A.2d at 763 (citations omitted).

■ The term "handicapped or disabled person" for purposes of the Act means a person who has a physical or mental impairment which substantially limits one or more major life activities, such as his ability to care for himself, perform manual tasks, walk, see, hear, speak, breathe, learn or work. See: *Action Industries, Inc. v. Pennsylvania Human Relations Commission*, 102 Pa.Cmwlth. 382, 518 A.2d 610 (1986); *School District of Philadelphia v. Friedman*, 96 Pa.Cmwlth. 267, 507 A.2d 882 (1986); *Philadelphia Electric Co. v. Pennsylvania Human Relations Commission*, 68 Pa.Cmwlth. 212, 448 A.2d 701 (1982); 16 Pa.Code § 44.4. The complete loss of sight in one eye is an impairment which substantially limits a major life function, namely, eyesight. *National R.R. Passenger Corp. (Amtrak) v. Pennsylvania Human Relations Commission*, 70 Pa.Cmwlth. 62, 67, 452 A.2d 301, 304 (1982). However, not every physical impairment which a job applicant may suffer constitutes a handicap or disability under Pennsylvania law. See, e.g.: *School District of Philadelphia v. Friedman*, supra (personality disorder not a disability under PHRA); *Philadelphia Electric Company v. Pennsylvania Human Relations Commission, supra* (morbid obesity not a handicap under PHRA).

■ Examining the facts of this case in light of these principles, it appears that McCloskey established that he had applied for a job for which he was qualified, that his application had been refused, and that Nu–Car had continued to seek other applicants with equal qualifications. However, it also seems clear that McCloskey failed to show that he was a handicapped or disabled person within the meaning of the Act. The only evidence McCloskey produced concerning impairment of his vision was his own testimony that the operation on his eye had been successful and that his vision was correctable with contact lenses and eyeglasses to 20/40. The correctable injury suffered by McCloskey is not equivalent to the complete and irreversible loss of an eye suffered by the plaintiff in *National R.R. Passenger Corp. (Amtrak) v. Pennsylvania Human Rela-*

*tions Commission, supra.* A disability does not exist for purposes of applying the Pennsylvania Human Relations Act's proscription against discrimination where an eye condition can be corrected through the simple use of such common and widely used corrective aids as contact lenses and eyeglasses. In our view, reduced but correctable visual acuity does not per se substantially impair seeing or working. See: *Padilla v. City of Topeka,* 238 Kan. 218, 708 P.2d 543 (1985) (myopic applicant whose vision was correctable to 20/20 with glasses or contact lenses was not handicapped); *Burgess v. Joseph Schlitz Brewing Co.,* 298 N.C. 520, 259 S.E.2d 248 (1979) (applicant with glaucoma whose vision was correctable with eyeglasses to 20/20 was not presently handicapped). But see: *Colorado Civil Rights Commission v. North Washington Fire Protection Dist.,* — Colo. —, 772 P.2d 70 (1989); *Brown County v. Labor & Industry Review Commission,* 124 Wis.2d 560, 369 N.W.2d 735 (1985). To adopt a definition of "handicapped" which would include persons whose vision is correctable by eyeglasses or contact lenses would "result in an expansion of disability protection beyond the logical scope of the Act.... Under such an expansive reading any individual rejected for a single job based on a physical impairment would be considered disabled under the law.... This court refuses to make the term handicapped a meaningless phrase." *Cooper v. Hennepin County,* — Minn. —, —, 441 N.W.2d 106, 113 (1989).

Appellee relies upon a decision of the Commonwealth Court in *Tesco Tank Center, Inc. v. Workmen's Compensation Appeal Board,* 107 Pa.Cmwlth. 469, 528 A.2d 1036 (1987), which held that for the purpose of determining entitlement to workmen's compensation benefits, only uncorrected vision would be considered in determining whether a claimant was disabled. Such a standard, although applicable in workmen's compensation cases, cannot be applied realistically or practically in cases alleging discrimination under the Pennsylvania Human Relations Act. The use of eyeglasses and contact lenses is so common that the

legislature could not have intended to include all persons who use them within the protection of the statute.

Because appellee failed to prove that he was a handicapped person, the decree granting relief and awarding damages must be reversed. Consequently, we do not consider appellant's remaining assignments of error.

Decree reversed.

MELINSON, J., dissents.