**ASSOCIATED RUBBER, INC., Petitioner**

v.

**PENNSYLVANIA HUMAN RELATIONS COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 1, 2005.

Decided April 8, 2005.

Reargument Denied May 19, 2005.

Christopher T. Moyer, Philadelphia, for petitioner.

Michael Hardiman, Asst. Chief Counsel, Philadelphia, for respondent.

BEFORE: PELLEGRINI, Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Associated Rubber, Inc. (Associated) appeals from a decision and order of the Pennsylvania Human Relations Commission (Commission) that found that it had unlawfully discriminated against James A. Cressman (Cressman) in violation of Section 5(a) of the Pennsylvania Human Relations Act (Act), Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. § 955(a).[1]

---

1. That section provides:

§ 955. Unlawful Discriminatory Practices. *It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification,* or in the case of a fraternal corporation or association, unless based upon membership in such association or corporation, or except where based upon applicable security regulations established by the United States or the Commonwealth of Pennsylvania:

(a) *For any employer because of* the race, color, religious creed, ancestry, *age*, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap *of any individual* or independent contractor, to refuse to hire or employ or contract with, or to bar or *to discharge from employment such individual* or independent contractor, *or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the* *best able and most competent to perform the services required.* The provision of this paragraph shall not apply, to (1) operation of the terms or conditions of any bona fide retirement or pension plan which have the effect of a minimum service requirement, (2) operation of the terms or conditions of any bona fide group or employe insurance plan, (3) age limitations placed upon entry into bona fide apprenticeship programs of two years or more approved by the State Apprenticeship and Training Council of the Department of Labor and Industry, established by the act of July 14, 1961 (P.L. 604, No. 304), known as "The Apprenticeship and Training Act." Notwithstanding any provision of this clause, it shall not be an unlawful employment practice for a religious corporation or association to hire or employ on the basis of sex in those certain instances where sex is a bona fide occupational qualification because of the religious beliefs, practices, or observances of the corporation, or association. . .

43 P.S. § 955(a). (Emphasis added.)

Associated manufactures and sells approximately 1,000 different rubber parts to over 200 customers throughout the U.S. and Canada.[2] Cressman was hired by Associated in 1948 when he was 21 years old to work as a general helper. In 1971, Cressman became the foreman of the Finishing Department until he was terminated on April 26, 2001, by John Oldt (Oldt), President of Associated, who terminated Cressman purportedly for "incompetence." Oldt, who took on the additional duties as foreman of the Finishing Department, was 28 at the time of Cressman's discharge. When discharged, Cressman was 73 years old.

Alleging that Associated had unlawfully discriminated against him because of his age by harassing him, subjecting him to differing terms and conditions of employment, and by discharging him, Cressman filed a complaint with the Commission on or about May 17, 2001.[3] In its answer to Cressman's complaint, Associated denied that any unlawful discrimination had occurred. The Commission made a subsequent investigation into Cressman's allegations and notified both parties that probable cause existed to credit allegations found in the complaint. After trying unsuccessfully to eliminate the alleged unlawful practices through conference and conciliation, the Commission notified Associated that it had approved the case for a public hearing.

At the hearing before Permanent Hearing Examiner Carl H. Summerson (Hearing Examiner), Cressman testified that as foreman of the Finishing Department, he was considered a member of management and, according to the collective bargaining agreement, could supervise the union workers but could not perform production functions himself. As a foreman, he reported to Oldt and Gary Scott, Jr. (Scott), Associated's Vice President and plant manager. On April 26, 2001, the day he was discharged, he received a telephone call requesting that he come to the main office. When he arrived, Oldt and John Kirshner (Treasurer Kirshner), Associated's Treasurer, were there, and Oldt told him that because things were not going the way he would like them to go, it was Cressman's last day of employment. When he requested a witness, he was told that no one was available. He also testified that when he asked for a separation notice, Oldt responded, "What do you want that for?" (Reproduced Record at 83.) After he told Oldt that he thought he was entitled to a separation notice, Oldt left the meeting to obtain one, filled it out with the words "employee discharged for incompetence," and gave it to him. Oldt then asked him for his keys, told him to go upstairs and pack up his belongings, and then leave and never return to the property.

Cressman testified that Oldt did not give him any reasons for why he found him to be incompetent and never during Oldt's time as President did Oldt advise him that his job performance was unsatisfactory, that he was not satisfied with the operation of the Finishing Department, or that

2. The production of the various rubber parts created by Associated occurs through the operation of three departments: (1) the Preparation Department, which prepares the rubber for the molding process; (2) the Press Line Department, which molds the parts to the specification of the customer; and (3) the Finishing Department, which removes any excess rubber and/or does whatever else is necessary to prepare the parts for shipment to the customer and ships the parts to the customer. Each department is run by a foreman.

3. Cressman filed an amended complaint on August 1, 2003, in which he added that in 2001, he was denied a salary increase and bonus because of his age.

the shipping function was not being handled properly. He also said that neither of the preceding Presidents of Associated or Treasurer Kirshner had ever advised him that his job performance was unsatisfactory, that he was incompetent, or that his employment was in jeopardy because of poor job performance. He did testify, however, that he concluded that Oldt no longer wanted him as an employee at Associated because usually each year around March 15, bonuses were distributed to each manager, yet on March 15, 2001, all managers except him received a bonus, and he did not receive a salary increase in 2001. At a meeting regarding why he did not receive a bonus, Oldt discussed Cressman's wife's illness and, in effect, told him that he had vacation time available, and maybe he should spend time at home with his sick wife. He also stated that there were two other occasions when Oldt asked him if he gave any thought to staying home with his wife. Oldt did not make any mention, however, that he should consider retiring.

Vice President Scott testified that he had never disciplined Cressman and never informed him that improvements were needed in the Finishing Department. He also testified that Cressman never formally indicated to him a desire to retire, but he had a discussion with Oldt regarding the possibility of Cressman retiring.

Oldt testified that his stepfather brought him into the company after he graduated from college in 1995, and he began working a week in each department without a job title. Beginning in 1998, his stepfather began to work less and less and began to shift more responsibilities to Scott and Oldt. After his stepfather retired in December 2000,[4] he became President of As-

sociated, although no written announcement was made to Associated's employees. Immediately prior to his becoming President, the company had lost a large customer and there was a gradual down-turn in other business, and he realized that to ensure that the company would remain profitable, he needed to make the company more efficient.

Regarding Cressman's job performance, Oldt testified that between 1999 and 2001, his opinion of him went from thinking Cressman knew everything in the Finishing Department to thinking that he did not know what to do because he never complied with his requests for improvements. He stated that his opinion changed because he failed to follow his instruction to be sure to clear out the work in progress which cluttered the floor around the finishing area, his inability to operate the Finishing Department's computerized shipping system, his failure to train employees, and his refusal to review the Finishing Department to look for ways to make it more efficient. Oldt explained that Cressman actually told him, "I'm not going to help you. You're going to have to fire me."

As to meetings he had with Cressman and Treasurer Kirshner before Oldt became President of Associated, Oldt testified that the August 31, 2000 meeting dealt with issues surrounding a Finishing Department employee with whom Cressman was having problems. Oldt advised Cressman of the need to document unsatisfactory behavior before terminating the employee. A note made by Oldt after the September 6, 2000 meeting was introduced into evidence, on which Oldt noted that he gave Cressman a "first verbal warning" for

4. We note that there was some discrepancy in the record of whether Oldt's stepfather retired in December 1999 or December 2000. Because the Hearing Examiner found the date to be December 2000, we will use that date.

having purportedly discussed company business with the union president and reminded Cressman to not discuss one employee's situation with another. According to the document, Cressman indicated that he would not "help" Oldt. Oldt also noted that Cressman had "not trained recently hired employees nor helped them to perform their jobs...."

Oldt explained that Associated did not prepare performance evaluations on its employees and, customarily, if Associated had done well financially the previous year, management employees were given a bonus and their salaries were increased. He stated that 2001 was the first year that he decided who would get a bonus and who would receive a salary increase, and all managers received a bonus and salary increase except for Cressman, because he determined that there were no improvements in the Finishing Department the prior year. He decided to terminate Cressman on April 25 or April 26, 2001, because Cressman would not train new employees or the employees as a whole, and he would not look for deficiencies in the Finishing Department's operations. He did admit that prior to becoming President, he said to Cressman in an informal conversation at some point, "Look, you're 74, you ought to consider retiring." In addition, Oldt testified that of Associated's approximately 27 employees, only five were less than 40 years of age.[5]

Finding that Associated had responded to Cressman's *prima facie* case by offering a legitimate, non-discriminatory reason for his discharge and not awarding Cressman a bonus or a pay raise in 2001, i.e., Cressman's poor job performance, the Hearing Examiner found, nonetheless, that Associated unlawfully discriminated against Cressman because of his age in violation of Section 5(a) of the Act by discharging him and not awarding a bonus and pay raise because:

- Cressman had been with Associated for over 50 years, the last 30 in a management position, and before Oldt became President he received bonuses and raises;

- Oldt's discussion with Scott about the possibility of Cressman retiring and conversation Oldt had with Cressman in which he said "you're 74 why don't you consider retiring"[6] and two conversations Oldt had with Cressman asking if had given any thought of taking vacation time to stay home with his sick wife; and[7]

- Oldt's reasons that Cressman was not performing his job competently were wrong.

He concluded that Oldt did not honestly hold the views he expressed as his motivations, and that age was the only motivation for Cressman's discharge. He recommended to the Commission that it adopt an order directing Associated to cease and desist from discrimination on the basis of age and immediately offer to reinstate Cressman as foreman of the Finishing De-

---

**5.** Treasurer Kirshner testified that he never supervised Cressman, never disciplined him, never discussed his performance with anyone, and never told Cressman that his work was unsatisfactory or that his job was in jeopardy. He did participate in two or three meetings with Cressman and Oldt, including Cressman's discharge meeting; however, he was usually called in as a witness by Oldt, and he was always unaware of the purpose of the meetings.

**6.** The Hearing Examiner did not find Oldt credible that he made his comment before 1998 because Cressman would have been either 69 or 70, not 74 years of age at that time.

**7.** The Hearing Examiner noted that when making these inquires, Oldt "did not know specifically what problems Cressman's wife had."

partment at his salary with all appropriate benefits with salary increments, bonuses, constructive seniority and all other benefits. In addition, the Hearing Examiner recommended that the Commission award Cressman approximately $470,000 in damages representing wages and benefits that he would have received had he remained employed by Associated at all times subsequent to April 26, 2001. Agreeing with the Hearing Examiner, the Commission adopted the Hearing Examiner's Findings of Fact, Conclusions of Law, Opinion and Order. This appeal followed.[8]

On appeal, Associated argues that substantial evidence [9] does not exist to establish that Associated's proffered reason for terminating Cressman was a mere pretext and that Associated unlawfully discriminated against him because of his age.

■■■ Under Pennsylvania law, cases arising under Section 5(a) of the Act, 43 P.S. § 955(a), are analyzed under the framework established by the United States Supreme Court in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and adopted by our Pennsylvania Supreme Court in *General Electric Corporation v. Com. Human Relations Commission,* 469 Pa. 292, 365 A.2d 649 (1976). Under this framework, the plaintiff bears the initial burden to prove that a *prima facie* case of discrimination exists. In age discrimination cases, the *prima facie* case is established by showing:

(1) That the complainant is a member of a protected class;

(2) That he was the object of adverse employment action;

(3) That he was qualified for the position in question; and

(4) That he was replaced by someone sufficiently younger to create an inference of age discrimination.

*Allegheny Housing Rehabilitation Corp. v. Pennsylvania Human Relations Commission,* 516 Pa. 124, 532 A.2d 315 (1987).

■■■ Once the complainant establishes a *prima facie* case, a presumption of discrimination is raised which can be rebutted by the employer producing evidence establishing a legitimate, non-discriminatory reason for its action. The employer's burden at this stage is extremely light because it is only one of production, not persuasion, and, thus, involves no credibility assessment. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Accordingly, the employer needs only to introduce evidence

---

8. In reviewing the Commission's decision, the court's scope of review is limited to a determination of whether there was a violation of constitutional rights, an error of law, or whether the findings of fact necessary to support the adjudication are not supported by substantial evidence. *Harrisburg School District v. Pennsylvania Human Relations Commission,* 77 Pa.Cmwlth. 594, 466 A.2d 760 (1983).

9. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support the conclusion. *Consumers Motor Mart v. Pennsylvania Human Relations Commission,* 108 Pa.Cmwlth. 59, 529 A.2d 571 (1987). In fact, we have defined it as follows:

"[S]ubstantial evidence" should be construed to confer finality upon an administrative decision on the facts when, upon an examination of the entire record, the evidence, including the inferences therefrom, is found to be such that a reasonable man, acting reasonably, *might* have reached the decision; but, on the other hand, if a reasonable man, acting reasonably, *could not* have reached the decision from the evidence and its inferences then the decision is not supported by substantial evidence and it should be set aside.

(Emphasis in original.) *St. Andrews Development Company v. Com. Human Relations Commission,* 10 Pa.Cmwlth. 123, 308 A.2d 623 (1973), *affirmed by* 478 Pa. 567, 387 A.2d 467 (1978).

which, *if taken as true*, would *permit* the conclusion that there was a non-discriminatory reason for the adverse action. If the employer meets this burden of production, the complainant must show by a preponderance of the evidence that the employer's proffered reason is pretextual and that the complainant was the victim of intentional discrimination in order to prevail. *Borough of Economy v. Pennsylvania Human Relations Commission,* 660 A.2d 143 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 543 Pa. 696, 670 A.2d 143 (1995). After all the evidence is presented, the trier of fact must determine which party's explanation of the employer's motivation it believes. *Allegheny Housing Rehabilitation Corporation.* The ultimate burden of persuasion—that is, proof of discrimination—remains with complainant.

■ Applying these shifting burdens to this case, Cressman established a *prima facie* case of age discrimination, thereby shifting the burden to Associated to offer a non-discriminatory reason for Cressman's discharge. Associated met its burden when, as the Commission found, it offered legitimate, non-discriminatory reasons for not awarding Cressman either a bonus or pay raise in 2001 and for terminating him on April 26, 2001, due to poor job performance. Because Associated met its burden of production, the burden then shifted back to Cressman to present substantial evidence from which the Commission could conclude that Associated's proffered reason was not the true reason for the employment decision, *and that age was.* A plaintiff may meet this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer *or indirectly by showing that the employer' s proffered explanation is unworthy of credence.*" *Texas Department of Community Affairs v. Burdine,*

450 U.S. 248, at 257, 101 S.Ct. 1089, 67 L.Ed.2d 207. (Emphasis added.) In other words, the complainant, either by direct or indirect evidence, must establish that the reason given—in this case, that Cressman was performing his job incompetently—was pretextual. *Economy,* 660 A.2d at 148.

■ One of the reasons proffered by Cressman to meet his burden that Associated discriminated against him on the basis of his age was the fact that he did not receive a bonus and salary increase in March 2001, after having received one for many years in the past. However, failure to obtain a salary increase or a bonus is not necessarily evidence of age discrimination because it is consistent with a finding that Cressman's job performance was not satisfactory. Moreover, just because prior supervisors gave yearly salary increases and bonuses does not mean that new supervisors have to do the same. Certainly, new supervisors have the right to demand a higher level of performance than old supervisors, and they are not bound by former supervisors' standards or inaction in not rooting out non-performing employees. While not receiving raises and bonuses may be an effect of age discrimination, it does not constitute substantial evidence that Associated's termination of Cressman was pretextual and amounted to unlawful age discrimination.

■ Another proffered reason was that Oldt made several statements in conversations he had with Cressman in which he indicated that Cressman should use his vacation time and take care of his sick wife. We are *nonplussed* how these statements constitute any evidence of age discrimination because Cressman admits that there was no mention of his age in those conversations or that he should consider retiring. Unlike the Commission, we cannot ascribe any illegal motives or that they

were coercive just because Oldt did not know the nature of Cressman's wife's illness and one of those statements was made when Cressman was informed that he was not getting a bonus. Again, this does not constitute indirect evidence that there was unlawful age discrimination.

As the Commission acknowledged, none of the above recounted alone met Cressman's burden of establishing that his discharge was the result of age discrimination. The Commission, though, found that those reasons, together with "weaknesses, implausibilities, inconsistencies and contradictions" it found in Oldt's testimony regarding Cressman's incompetency, were sufficient to show that Associated's legitimate non-discriminatory reason for discharging Cressman was pretextual, and that *Cressman's age was the only motivation for his discharge.*

One of the reasons that the Commission found that Associated's proffered reason was not worthy of credence was that Oldt's explanation was not credible in that the notes documenting the meetings with Cressman were created within eight days of each other. It noted that one meeting was held to discuss Cressman's purported failure to train "recently hired employees" even though over a year-and-a-half had passed since anyone was hired. Both actions created questions as to whether they were created as an attempt to concoct a written record critical of Cressman when, in fact, Cressman did not have performance problems sufficient to result in termination. First, contrary to the Commission's finding, the memos state that Cressman had failed to train employees in the past, not current employees, as the Commission found. Second, just because the memos were created within eight days of each other does not constitute evidence that the reason proffered by Associated for discharging Cressman was pretextual,

only that Associated was preparing to terminate him.

■■■ Another weakness that the Commission found that made the discharge for incompetence pretextual were the inquiries Oldt made regarding Cressman's retirement. It recounted several inquires that Oldt had with Scott about when Cressman was going to retire which, it admitted, did not constitute substantial evidence of age discrimination because an employer is allowed to discuss the retirement plans of its employees. *Wilson v. Firestone Tire Co.,* 932 F.2d 510 (6th Cir.1991) ("simple inquiry about retirement plans does not show animosity towards age, but coercive inquiry does.") Yet, in finding the discharge pretextual, it placed much weight on the statement Oldt made to Cressman, "Look, you're 74, you ought to consider retiring." First, this statement cannot be considered evidence of discrimination because Cressman does not remember the statement at all, so it cannot be considered coercive. Second, the evidentiary value of this statement is problematic. Oldt admits that he made such a statement, but he made it long before he became President. The Commission only finds that the statement was half-believable, because if it was made when Oldt said he made it, Cressman would have been 69 or 70. Accordingly, even if Oldt incorrectly recalled the date of the statement or had Cressman's age wrong when he made it, the statement alone, just by mentioning age, without a showing that it occurred in a coercive setting, does not constitute age discrimination or support a finding that Associated's proffered reason for discharging Cressman for incompetence was pretextual.

In this case, Cressman had the burden to produce substantial evidence that Associated's proffered reason was pretextual by establishing that he was discharged due to his age, which he did not do. No substan-

tial, relevant evidence, either direct or indirect, was offered that the reason that he was fired was due to his age; he did not produce any evidence that he was presently performing his duties in a competent manner or that the company had a policy to force out older managers.

Accordingly, because Cressman did not present substantial evidence showing that Associated discriminated against him on the basis of age by terminating his employment and failing to give him a salary increase and bonus in March 2001, the order of the Commission is reversed.

### ORDER

AND NOW, this *8th* day of *April,* 2005, the order of the Pennsylvania Human Relations Commission dated August 31, 2004, at No. 200027235, finding that Associated Rubber, Inc. had unlawfully discriminated against James A. Cressman and awarding damages to Cressman is reversed.