**ASSOCIATED RUBBER, INC., Petitioner**

v.

**PENNSYLVANIA HUMAN RELATIONS COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 13, 2006.

Decided Jan. 3, 2007.

Reargument Denied Feb. 21, 2007.

Christopher T. Moyer, Philadelphia, for petitioner.

Michael Hardiman, Chief Counsel, Harrisburg, for respondent.

BEFORE: SMITH–RIBNER, Judge, and PELLEGRINI, Judge, and LEADBETTER, Judge.

OPINION BY Judge PELLEGRINI.

This appeal was previously before us in *Associated Rubber, Inc. v. Pennsylvania Human Relations Commission,* 872 A.2d 864 (Pa.Cmwlth.2005) (*Associated I*), where we held that James A. Cressman (Cressman) did not present substantial evidence showing that Associated Rubber, Inc. (Associated) discriminated against him

on the basis of age in violation of Section 5(a) of the Pennsylvania Human Relations Act (Act), Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. § 955(a),[1] by terminating his employment and failing to give him a salary increase and bonus in March 2001. The Pennsylvania Supreme Court has remanded the matter to us for reconsideration.

Associated manufactured and sold various rubber parts. In 1948, Cressman was hired by Associated as a general helper and in 1971, he became the foreman of the Finishing Department[2] until John Oldt (Oldt), President of Associated, terminated him on April 26, 2001, for "incompetence." Twenty-eight year old Oldt took on the additional duties as foreman of the Finishing Department when 73–year–old Cressman was discharged.

Cressman filed an amended complaint with the Pennsylvania Human Relations Commission (Commission) alleging that Associated had unlawfully discriminated against him because of his age by harassing him, subjecting him to differing terms and conditions of employment, discharging him, and denying him a salary increase and bonus. Associated filed an answer denying the allegations. After an investigation, the Commission determined probable cause existed to credit allegations found in the complaint. The Commission approved the case for public hearing after it unsuccessfully tried to eliminate the al-

leged unlawful practices through conference and conciliation.

At the hearing before a Hearing Examiner, Cressman testified that as foreman of the Finishing Department, he was considered a member of management and, according to the collective bargaining agreement, could supervise the union workers but could not perform production functions himself. He testified that as a foreman, he reported to Oldt and Gary Scott, Jr. (Scott), Associated's Vice President and plant manager. Cressman stated that on April 26, 2001, the day he was discharged, he received a telephone call requesting that he come to the main office. When he arrived, Oldt and John Kirshner (Kirshner), Associated's Treasurer, were present, and Oldt told him that because things were not going the way he would like them to go, it was Cressman's last day. When he requested a witness, Cressman was told that no one was available. Cressman also testified that when he asked for a separation notice, Oldt responded, "what do you want that for?" (Reproduced Record at 83.) After Cressman told Oldt that he was entitled to a separation notice, Oldt left the meeting and returned with one on which he wrote, "Employee was discharged for incompetence." (Reproduced Record at 309.) Oldt then asked Cressman for his keys, told him to pack up his belongings

---

1. Section 5(a) of the Act provides, in pertinent part:

   It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or in the case of a fraternal corporation or association, unless based upon membership in such association or corporation, or except where based upon applicable security regulations established by the United States or the Commonwealth of Pennsylvania:

   (a) For any employer because of the ... age ... of any individual ... to discharge

from employment such individual ... or to otherwise discriminate against such individual ... with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual ... is the best able and most competent to perform the services required.

2. The Finishing Department removes any excess rubber from the parts and/or whatever else is necessary to prepare the parts for shipment and then ships the parts to the customer.

and leave and never return to the property.

Cressman stated that Oldt neither explained why he found him to be incompetent nor advised him during his time as President that Cressman's job performance was unsatisfactory, that Oldt was not satisfied with the operation of the Finishing Department, or that shipping was not being handled properly. Cressman also testified that neither of the preceding Presidents of Associated nor Kirshner ever advised him that his job performance was unsatisfactory, that he was incompetent, or that his employment was in jeopardy because of poor job performance. He did testify, however, that he concluded that Oldt no longer wanted him as an employee because normally around March 15 of each year, bonuses were distributed to each manager; yet, in 2001, all managers except Cressman received a bonus. Cressman stated that he also did not receive a salary increase in 2001. At a meeting regarding why he did not receive a bonus, Oldt discussed Cressman's wife's illness and, in effect, told him that he had vacation time available and maybe should spend time at home with his sick wife. Cressman also testified that two other times Oldt asked him if he gave any thought to staying home with his wife. He admitted, however, that Oldt did not mention that he should consider retiring.

Scott testified that he had never disciplined Cressman, never informed him that improvements were needed in the Finishing Department, and Cressman never formally indicated to him a desire to retire. Scott stated, however, that he did have a discussion with Oldt regarding the possibility of Cressman retiring.

Oldt testified that his stepfather brought him into the company after he graduated from college in 1995, and he began working a week in each department without a job title. Beginning in 1998, his stepfather started to progressively work less and to shift more responsibilities to Scott and Oldt. After his stepfather retired in December 2000,[3] he became President of Associated, although no written announcement was made to Associated's employees. Oldt stated that immediately prior to becoming President, Associated lost a large customer and there was a gradual downturn in other business. He testified that he realized to ensure that Associated remained profitable, he needed to make the company more efficient.

Regarding Cressman's job performance, Oldt testified that between 1999 and 2001, his opinion went from thinking Cressman knew everything in the Finishing Department to thinking he did not know what to do because he never complied with requests for improvements. Oldt stated his opinion changed because Cressman failed to follow instructions to be sure to clear out the work in progress which kept the floor around the finishing area cluttered, his inability to operate the Finishing Department's computerized shipping system, his failure to train employees, and his refusal to review the Finishing Department to identify ways to make it more efficient.

As to meetings he had with Cressman before becoming President of Associated, Oldt testified that the August 31, 2000 meeting dealt with issues surrounding a Finishing Department employee with whom Cressman was having problems. Oldt advised Cressman of the need to document unsatisfactory behavior before terminating the employee. A note made by

**3.** We noted in *Associated I* that there was some discrepancy in the record of whether Oldt's stepfather retired in December 1999 or December 2000. Because the Hearing Examiner found the date to be December 2000, we used that date.

Oldt after a meeting on September 6, 2000,[4] was introduced into evidence and provided that he gave Cressman a "first verbal warning" for having purportedly discussed company business with the union president and reminded him not to discuss one employee's situation with another. According to the document, Cressman indicated that he would not "help" Oldt and that Oldt "would have to fire him."

Oldt explained that Associated did not prepare performance evaluations on its employees and, customarily, if Associated had done well financially the previous year, management employees were given a bonus and salary increase. He testified that 2001 was the first year that he decided who would get a bonus and salary increase, and all managers received them except for Cressman because no improvements were made in the Finishing Department the prior year. Oldt decided to terminate Cressman because he would not train new employees or the employees as a whole and would not look for deficiencies in the Finishing Department operations. Oldt did admit that prior to becoming President, he told Cressman in an informal conversation, "Look, you're 74, you ought to consider retiring." He also testified that of Associated's approximately 27 employees, only five were less than 40 years of age.[5]

Finding that Associated had responded to Cressman's *prima facie* case by offering a legitimate, non-discriminatory reason for his discharge and not awarding him a bonus or pay raise in 2001, i.e., Cressman's poor job performance, the Hearing Examiner found, nonetheless, that Associated unlawfully discriminated against Cressman because of his age in violation of Section 5(a) of the Act because:

· Cressman had been with Associated for over 50 years, the last 30 in a management position, and before Oldt became President he received bonuses and raises;

· Oldt's discussion with Scott about the possibility of Cressman retiring and conversation Oldt had with Cressman in which he said "you're 74 why don't you consider retiring"[6] and two conver-

---

4. The September 6, 2000 note provided:

   Found out that Company business was discussed with Union president. [Cressman] acknowledged it was him who said something. After being told about this in the past this is 1st verbal warning with [Kirshner] as a witness. In this conversation [Cressman] mentioned that he would not "help me" which as I took it meant that he will not fulfill his supervisory duties so I cannot run this company efficiently. He said I would have to fire him & he would go down & collect unemployment. I mentioned that in the past he had not trained recently hired employees, or helped them perform jobs—he would just claim "new people" when I questioned him on any costs. I told him the foreman should help the new employees perform their jobs. Also discussed was a posting on the Company B.B. which [Cressman] had nothing to do with however it did contain information which only [Cressman] knew about and

   pertained to another employee. [Cressman] was reminded *again,* not to discuss *any* employee's situation with another & told to tell the people working upstairs that no one is to post anything on the company B.B.
   (Reproduced Record at 422.)

5. Kirshner testified that he never supervised Cressman, disciplined him, discussed his performance with anyone or told Cressman that his work was unsatisfactory or his job was in jeopardy. He did participate in two or three meetings between Oldt and Cressman, including Cressman's discharge meeting; however, he was usually called in as a witness by Oldt and was never made aware of the purpose of the meetings.

6. The Hearing Examiner did not find Oldt credible that he made this comment before 1998 because Cressman would have been either 69 or 70, not 74 years of age at that time.

sations Oldt had with Cressman asking if he had given any thought of taking vacation time to stay home with his sick wife; and [7]

· Oldt's reasons that Cressman was not performing his job competently were wrong.

He concluded that Oldt did not honestly hold the views he expressed as his motivations, and that age was the only motivation for Cressman's discharge. The Hearing Examiner recommended to the Commission that it adopt an order directing Associated to cease and desist from discrimination on the basis of age and immediately offer to reinstate Cressman as foreman of the Finishing Department at his salary with all appropriate benefits, salary increments, bonuses, constructive seniority and all other benefits. He also recommended that the Commission award Cressman approximately $470,000 in damages representing the wages and benefits that he would have received had he remained employed by Associated at all times subsequent to April 26, 2001. Agreeing with the Hearing Examiner, the Commission adopted his Findings of Fact, Conclusions of Law, Opinion and Order.

On appeal to this Court, Associated argued that substantial evidence did not exist to establish that its proffered reason for terminating Cressman was a mere pretext and that Associated unlawfully discriminated against Cressman because of his age. After following the framework for analyzing cases arising under Section 5(a) of the Act developed by the United States Supreme Court in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and adopted by our Supreme Court in *General Electric Corporation v. Com. Human Re-*

*lations Commission,* 469 Pa. 292, 365 A.2d 649 (1976), we reversed, stating:

Cressman had the burden to produce substantial evidence that Associated's proffered reason was pretextual by establishing that he was discharged due to his age, which he did not do. No substantial, relevant evidence, either direct or indirect, was offered that the reason that he was fired was due to his age; he did not produce any evidence that he was presently performing his duties in a competent manner or that the company had a policy to force out older managers. Accordingly, because Cressman did not present substantial evidence showing that Associated discriminated against him on the basis of age by terminating his employment and failing to give him a salary increase and bonus in March 2001, the order of the Commission is reversed.

*Associated I,* 872 A.2d at 872–73.

The Commission filed a petition for allowance of appeal with our Supreme Court. In that petition, it pointed out that we had set forth the incorrect standard that Cressman had to meet before the Commission which was that he had to meet his burden by "substantial evidence," and citing *Allegheny Housing Rehabilitation Corporation v. Pennsylvania Human Relations Commission,* 516 Pa. 124, 532 A.2d 315, 316 (1987), the Court correctly noted that Cressman's burden before the Commission was only that he had to persuade the Commission by a preponderance of the evidence. By order dated December 16, 2005, the Court remanded the matter to us for:

[R]econsideration under the applicable burden and standard of review. *Allegheny Hous. Rehab. Corp. v. Pa. Human Rels. Comm'n.,* 516 Pa. 124, 532

---

**7.** The Hearing Examiner noted that when making these inquires, Oldt "did not know specifically what problems Cressman's wife had."

A.2d 315, 316 (1987). ("If [the employer offers a legitimate and non-discriminatory reason for discharge], the question for the Commission is whether, on all the evidence produced, the plaintiff has persuaded it by a preponderance of the evidence that the employer intentionally discriminated against [him]."); *In re Funds in the Possession of Conemaugh Township Supervisors*, 562 Pa. 85, 753 A.2d 788, 790 (2000) ("The referee is the sole judge of credibility and is free to believe all, part, or none of the evidence.") (citation omitted); *see also Com., Human Rels. Comm'n. v. Feeser*, 469 Pa. 173, 364 A.2d 1324, 1326 (1976). (Emphasis added.)

▉▉▉ To comply with our Supreme Court's order, we will begin our analysis anew. We begin by setting forth the procedures to be followed in a matter involving unlawful discrimination. A complainant must file a complaint with the Commission stating the name and address of the employer that committed the unlawful discriminatory practice, along with the particulars and any other information required by the Commission.[8] The employer must then file an answer.[9] Afterward, the Commission conducts an investigation, and if it determines that probable cause exists and is unable to eliminate the unlawful discriminatory practice,[10] a hearing is held before the Commission.[11] In order for the Commission to find that the employer engaged in any unlawful discriminatory practice, its determination must be based on all the evidence at the hearing.[12]

Once the hearing begins, we follow the shifting burden standard set forth in *McDonnell Douglas* providing a three-part allocation of proof formula, which requires: 1) an initial *prima facie*[13] showing by the

8. Section 9(a) of the Act, 43 P.S. § 959(a), provides, in pertinent part:

Any person claiming to be aggrieved by an alleged unlawful discriminatory practice may make, sign and file with the Commission a verified complaint, in writing, which shall state the name and address of the ... employer ... alleged to have committed the unlawful discriminatory practice complained of, and which shall set forth the particulars thereof and contain such other information as may be required by the Commission....

9. Section 9(b)(3) of the Act, 43 P.S. § 959(b)(3), provides "[a] respondent shall file a written, verified answer to the complaint within thirty days of service of the complaint...."

10. Section 9(c) of the Act, 43 P.S. § 959(c), provides "[i]f it shall be determined after such investigation that probable cause exists for crediting the allegations of the complaint, the Commission shall immediately endeavor to eliminate the unlawful discriminatory practice complained of by conference, conciliation and persuasion."

11. Section 9(d) of the Act, 43 P.S. § 959(d), provides, in pertinent part:

In case of failure so to eliminate such practice or in advance thereof, if in the judgment of the Commission circumstances so warrant, the Commission shall cause to be issued and served a written notice, together with a copy of such complaint as the same may have been amended, requiring the ... employer ... named in such complaint, hereinafter referred to as respondent, to answer the charges of such complaint at a hearing before the Commission at a time and place to be specified in such notice....

12. Section 9(f)(1) of the Act, 43 P.S. § 959(f)(1), provides, in pertinent part:

If, upon all the evidence at the hearing, the Commission shall find that a respondent has engaged in or is engaging in any unlawful discriminatory practice as defined in this act, the Commission shall state its findings of fact, and shall issue and cause to be served on such respondent an order requiring such respondent to cease and desist from such unlawful discriminatory practice....

13. When adapted for age discrimination cases, the steps are as follows: 1) the complainant is a member of a protected class; 2)

complainant; 2) if such showing is made, a burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions;[14] and 3) if that burden is met, a burden of persuasion shifts back to the complainant to prove by a preponderance of the evidence that the reasons offered by the employer for its actions were a pretext, and that actual discriminatory reasons motivated the employer.[15] A complainant may meet this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). (Emphasis added.)

■ Applying these shifting burdens to this case, because Associated agreed that Cressman, without challenge, established a *prima facie* case of age discrimination, the burden of production shifted to Associated, and the Commission accepted its offer of poor job performance as a legitimate, non-discriminatory reason for its action. Because Associated met its burden, the burden shifted back to Cressman to persuade the Commission by a preponderance of the evidence that Associated's proffered reason was not the true reason for the employment decision and that age was. Our review still requires a determination of whether the findings of fact necessary to support the Commission's decision are supported by substantial evidence or

whether the Commission's outcome constitutes an abuse of discretion. *Harrisburg School District v. Pennsylvania Human Relations Commission,* 77 Pa.Cmwlth. 594, 466 A.2d 760 (1983).

The question presented now is whether, on all the evidence produced of which the Commission was the sole judge of credibility, there was substantial evidence to support the Commission's finding that Associated's proffered reasons were not worthy of credence and Associated discriminated against Cressman because of his age in violation of Section 5(a) of the Act. Associated contends that the Commission erred in determining that Cressman demonstrated that its proffered reason for terminating him was not the real reason, but rather a mere pretext for unlawful employment discrimination. Associated contends that the Commission did not have substantial evidence upon which it could find that Associated's proffered reasons were unworthy of credence and that Cressman's age was the only motivation for its decision to discharge him.

Apparently, the Commission also determined that there was no single piece of evidence that Cressman produced that could persuade it that Associated engaged in unlawful age discrimination because it went on to base its decision on a finding that Associated's explanation for its action was not worthy of belief stating:

> ... Taken as a whole, the evidence makes a substantial showing that the

---

he was the object of adverse employment action; 3) he was qualified for the position in question; and 4) he was replaced by someone sufficiently younger to create an inference of age discrimination. *Id.*

**14.** The employer's burden at this stage is extremely light because it is only one of production, not persuasion, and, thus, involves no credibility assessment. *St. Mary's Honor Cen-*

*ter v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

**15.** In other words, the Commission is to evaluate the entire body of evidence under the preponderance standard to "decide which party's explanation of the employer's motivation it believes." *Allegheny Housing,* 516 Pa. at 131, 532 A.2d at 319.

reasons articulated by Oldt for the actions taken against Cressman were neither honestly believed nor genuine, and that a protected trait actually motivated Oldt to take action against him.

The aggregate of evidence that supports this showing is demonstrated by evidence that shows weaknesses, implausibilities, inconsistencies and contradictions in Associated's proffered non-discriminatory reasons for its actions. While no piece of evidence standing alone is sufficient to prove discrimination here, when taken as a whole, the evidence strongly supports Cressman while casting considerable doubt on the credibility of Oldt.

(Reproduced Record at 16.) However, after examining each of the reasons given by the Commission, the aggregate of the evidence does not establish implausibilities, inconsistencies and contradictions, and we cannot find any substantial evidence upon which the Commission could have made a finding that Cressman's discharge was due to age discrimination.

■ One of the reasons that the Commission advanced for its finding that Associated discriminated against Cressman on the basis of his age was that he did not receive a salary increase and bonus in March 2001, after having received them for many years in the past. However, failure to obtain a salary increase or bonus is not evidence of age discrimination as a matter of law, but it is consistent with a finding that Cressman's job performance was not satisfactory. Even Cressman agreed the decision as to whether to give a salary increase or bonus was to be based upon an employee's job performance. Moreover, even though former supervisors gave yearly salary increases and bonuses, that did not mean new supervisors were required to do the same. New supervisors have the right to demand a higher level of performance than former supervisors, and they are not bound by former supervisors' standards or failures to eliminate non-performing employees. While not receiving salary increases and bonuses may be an effect of age discrimination, this was not substantial evidence for the Commission to have found that Cressman established by a preponderance of the evidence that Associated's termination of him was pretextual and amounted to unlawful age discrimination.

■ Another proffered reason was that Oldt made several statements in conversations he had with Cressman in which he indicated that Cressman should consider using his vacation time to take care of his sick wife. We are confused how these statements constitute evidence of age discrimination as a matter of law because Cressman admitted that there was no mention of his age during those conversations or that he should consider retiring. Unlike the Commission, we cannot ascribe any illegal motives or that Oldt was coercive merely because he did not know the nature of Cressman's wife's illness and made one of the statements when Cressman was told he was not getting a bonus. Even considering the fact that Cressman did not receive a salary increase and bonus together with Oldt's statements, this is not evidence that the Commission could have relied on in weighing whether Cressman established that Associated's termination of him was pretextual and amounted to unlawful age discrimination.

■ Another area where the Commission found that Associated's proffered reason was not worthy of credence related to performance issues Associated had with four aspects of Cressman's work, that is, clutter on the production floor, ignorance of the computerized shipping system, lack of knowledge of the trimming process and failure to train employees. Regarding the

clutter in the Finishing Department, Oldt explained that Cressman allowed the floor of the Finishing Department to remain cluttered with work in progress, and Cressman admitted that Oldt had asked him to move the boxes of products from the floor. Cressman ignored Oldt's request by instructing his crew to fill customer's orders before clearing the excess work in progress. The Commission, however, attempted to explain away Cressman's blatant refusal to follow a request by his supervisor with an unsupported statement—"Oldt knew all along that the production department was the root cause of the accumulation of extra production in the finishing department." (Reproduced Record at 20.) That is not substantial evidence on which the Commission could find that Associated's proffered reason was not worthy of credence. To the contrary, that evidence made Associated's proffered reason worthy of credence because when an employee is ordered by a supervisor to do something and he or she fails to carry it out, any reasonable person should know that places his or her job in jeopardy.

Second, there was no dispute that Cressman never learned how to operate the computerized shipping system that was installed in 1998 or 1999. The Commission, however, explained this away by stating "Cressman was never told his job was in jeopardy if he did not learn the new system." (Reproduced Record at 20.) Once again, it goes without saying that an employee who fails to keep abreast of changes in the operation of the department in which he is responsible for running should automatically presume that his job is in jeopardy.

Third, Oldt testified that Cressman lacked the knowledge of how to trim parts. The Commission relied on Cressman's 30 years as foreman and prior receipt of sala-

ry increases and bonuses as proof of his ability to perform, and stated "[i]f he did not even know how to perform the principal functions of his department, he simply could not have successfully held the supervisory position." (Reproduced Record at 23.) As previously noted, new supervisors could demand a higher level of performance than former supervisors and were not bound by former supervisors' standards or failures to eliminate non-performing employees. Furthermore, Cressman even acknowledged that he was unable to perform a "principal function" of his department by stating that he did not know how to operate the computerized shipping system.

Fourth, Oldt testified that Cressman failed to train employees of the Finishing Department, specifically, Mustapha Afellah, Eva Marie Deutsch and Joyce Hockman, who were hired May 11, 1999, November 13, 1998, and January 5, 1999. Rather than focusing on the fact that in 1998, Oldt's stepfather began to progressively work less and shift responsibilities to Scott and Oldt, and "[b]y the end of 1999, it was apparent to Cressman that Oldt had the authority to control Associated's day-to-day operations,"[16] the Commission incorrectly focused on when the employees were trained and when Oldt became President. Simply put, at the time these employees were hired to work in Cressman's department, he was responsible for training them irrespective of when Oldt became President. Considering all the performance issues raised by Associated, there was not substantial evidence to support the Commission's finding of weaknesses, implausibilities, inconsistencies and contradictions in Associated's proffered reason for its action.

■ Another weakness the Commission found that made Cressman's discharge for

---

**16.** Reproduced Record at 5.

incompetence pretextual was the inquiries Oldt made regarding Cressman's retirement. It recounted several discussions that Oldt had with Scott about when Cressman was going to retire which, it admitted, did not constitute evidence of age discrimination because an employer is allowed to discuss the retirement plans of its employees. *Wilson v. Firestone Tire Co.*, 932 F.2d 510 (6th Cir.1991) ("simple inquiry about retirement plans does not show animosity towards age, but a coercive inquiry does.") Yet, in finding the discharge pretextual, it placed much weight on the statement Oldt made to Cressman, "Look, you're 74, you ought to consider retiring." First, this statement did not constitute evidence of discrimination because Cressman did not remember the statement at all. Thus, it could not have been coercive. Second, the evidentiary value of this statement is problematic. The Commission only found that the statement was half-believable because if it was made when Oldt said he made it Cressman would have been 69 or 70. Even if Oldt incorrectly recalled the date of the statement or had Cressman's age wrong, mentioning age alone, without showing that it occurred in a coercive setting, did not constitute age discrimination as a matter of law or support a finding that Associated's proffered reason for discharging Cressman for incompetence was pretextual.

Another reason that the Commission found Associated's proffered reason was not worthy of credence was that Oldt's explanation was not credible in that the memos documenting his meetings with Cressman were created within eight days of each other. Both memos created questions as to whether they were made as an attempt to concoct a written record critical of Cressman when, in fact, Cressman did not have performance problems sufficient to warrant his termination. The August 31, 2000 memo noted Cressman's "... fail-

ure to train employees, losing production time while discussing personal matters with employees." (Reproduced Record at 363.) Instead of acknowledging this as a meeting whereby Oldt was expressing his displeasure with Cressman's past performance, the Commission focused on the fact that "... Oldt did not call in the production foreman to discuss such things as the wasteful practice of parts overruns in his department." (Reproduced Record at 24.) Furthermore, the Commission noted that the September 6, 2000 meeting was held to discuss Cressman's purported failure to train "recently hired employees" even though over a year-and-a-half had passed since anyone was hired. However, the Commission misstated the memo, which actually provided "... **in the past** [Cressman] had not trained recently hired employees, or helped them perform jobs." Even though the memos were created within eight days of each other, that was not evidence as a matter of law that the reason proffered by Associated for discharging Cressman was pretextual, only that Associated was preparing to terminate Cressman.

The Commission also considered Associated's proffered reason for discharging Cressman as not worthy of credence because "[t]here was no meaningful explanation of anything." (Reproduced Record at 25.) The Commission, however, overlooked the memos dated August 31, 2000, and September 6, 2000, documenting meetings in which Oldt informed Cressman that he was dissatisfied with Cressman's job performance. The September 6, 2000 memo also indicated Cressman's response to Oldt's remarks on his performance: "[i]n this conversation [Cressman] mentioned that he would not "help me" which as I took it meant that he will not fulfill his supervisory duties so I cannot run this company efficiently. He said I would have

to fire him & he would go down & collect unemployment." Therefore, the memos, together with not receiving a salary increase or bonus in March 2001, were strong indicators that Oldt was dissatisfied with Cressman's job performance, and that the true reason for his discharge was incompetence, not age.

Based on all the evidence at the hearing, there was not substantial evidence from which the Commission could reasonably find that Associated's proffered reasons were not worthy of belief. None of the largely undisputed facts establish, as the Commission acknowledges, that Associated's discharge of Cressman was due to his age. Rather than facts, it is the largely unwarranted conclusions that the Commission draws from those facts to create "implausibilities, inconsistencies and contradictions" from which it found that Associated's proffered reasons that it fired Cressman for no longer being able to perform his job was not worthy of credence. Accordingly, because there was not substantial evidence to support the Commission's finding that Cressman's age was the motivation for Associated's decision to discharge him and the Commission's conclusion constituted an abuse of discretion, the order of the Commission is reversed.

Judge SMITH–RIBNER dissents.

### ORDER

AND NOW, this *3rd* day of *January*, 2007, the order of the Pennsylvania Human Relations Commission, dated August 31, 2004, at PHRC Case No. 200027235, is reversed.