IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph J. Trovato, Jr.,                    :
                                           :
                        Petitioner         :
                                           :
            v.                             : No. 1263 C.D. 2021
                                           : Submitted: March 25, 2022
Citizens Financial Group                   :
(Workers' Compensation                     :
Appeal Board),                             :
                                           :
                        Respondent         :


BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                            FILED:  August 29, 2022


            Joseph J. Trovato, Jr. (Claimant) petitions for review of an order of the
Workers' Compensation Appeal Board (Board) that reversed a decision of the
Workers' Compensation Judge (WCJ) insofar as it granted Claimant's request for
specific loss of sight benefits and affirmed in all other respects.  Claimant contends
that the WCJ's determination of specific loss was supported by substantial medical
evidence and that the Board erred or abused its discretion by reweighing medical
evidence in reversing.  Discerning no error or abuse of discretion, we affirm the
Board's order.

## I. Background

On March 27, 2019, Claimant filed a Claim Petition in which he alleged that he sustained a work-related injury on September 13, 2017, in the nature of a retinal detachment of the left eye during the course and scope of his employment with Citizens Financial Group (Employer) as a Senior Project Manager/Vice President. Claimant sought specific loss benefits for his left eye. WCJ's Opinion, 1/25/21, Finding of Fact (F.F.) Nos. 1-2. Employer filed a timely answer denying all material allegations. Before the WCJ, Claimant testified and presented evidence in support of his claim; Employer offered evidence in opposition.

The pertinent facts as found by the WCJ may be summarized as follows. Claimant testified that, on Wednesday, September 13, 2017, he was with a coworker buying items needed for a corporate event. As he was lifting cases of bottled water off a shelf and loading them onto a dolly, he noticed some sparks or bright lights in the top left of his left eye. Claimant mentioned the incident to his boss that same day. Claimant's vision quickly deteriorated, such that, by late Sunday, he lost almost 75% of his vision. On Monday, Claimant sought medical treatment and underwent surgery two days later on September 20, 2017, performed by P. William Conrad, M.D. (Dr. Conrad). Claimant denied ever experiencing sparks or bright lights in his left eye before September 13, 2017. Claimant acknowledged prior cataract surgeries for both eyes; the left eye surgery was in November 2013. F.F. No. 3.

About a month after surgery, Claimant again noticed rapid deterioration of his vison. He returned to Dr. Conrad's office and underwent a second surgery on November 1, 2017, performed by Dr. Conrad's colleague, Karl R. Olsen, M.D. (Dr. Olsen). Following the second surgery, Claimant wore a contact lens bandage. In the following six months, Claimant testified that there was not much change in the

vision of his left eye.  Without glasses, Claimant testified that his left eye vision is wavy and distorted.  After the second eye surgery, Claimant was out of work on short-term disability.  Claimant confirmed that he is still working, and that Employer has made accommodations for him, such as large computer monitors.  F.F. No. 3.

Dr. Olsen, who is board certified in ophthalmology, testified by deposition that he personally treated Claimant for his retinal detachment as did his colleague, Dr. Conrad.  Dr. Olsen testified that Dr. Conrad first saw Claimant on September 18, 2017, and performed surgery to repair a detached retina in Claimant's left eye.  On October 31, 2017, Claimant presented with another retinal detachment with scar tissue in the left eye.  Dr. Olsen opined that the scar tissue developed from the first surgery and caused the second retinal detachment.  Dr. Olsen last saw Claimant on April 16, 2020.  At that time, Claimant's vision in his uninjured right eye was 20/25; his vision in his left eye had improved to 20/63.  Dr. Olsen noted that Claimant still had scar tissue in his left eye that could cause recurrent swelling and problems affecting his vision.  F.F. No. 4.

Dr. Olsen further testified that Claimant's left eye vision is unlikely to dramatically improve in the future.  Dr. Olsen also noted that Claimant is nearsighted, which increases his risk of retinal detachment.  Claimant had lattice degeneration, within the retina of his left eye, which puts him at additional risk for retinal detachment.  Dr. Olsen opined that the work-related event of September 13, 2017, was a major contributor to the retinal detachment.  Dr. Olsen found it significant that Claimant was lifting cases of water when he became symptomatic, and his retina started the process of detachment.  Dr. Olsen opined that Claimant has lost the use of his left eye for central visual acuity.  Dr. Olsen further opined that

3

Claimant's loss of use of his left eye is due to the work incident of September 13, 2017, and that the condition of his left eye is permanent. F.F. No. 4.

In opposition, Employer offered the deposition testimony of Christ Balouris, M.D. (Dr. Balouris). Dr. Balouris, who is board certified in ophthalmology, testified that he does not do retinal detachment surgery and refers patients to Dr. Olsen's group, which he described as "a very good group." Reproduced Record (R.R.) at 246a. Dr. Balouris examined Claimant on June 12, 2019, and found Claimant's uncorrected vision was 20/30 in his right eye and 20/400 in his left eye. Dr. Balouris noted that 20/400 vision is a significant visual loss and impairment. Dr. Balouris noted Claimant had peripheral scarring and retinal pigment changes, which he stated was a permanent condition. He acknowledged that Claimant may need to undergo glaucoma surgery at some point, which would be related to the retinal detachment and prior retinal surgeries. Dr. Balouris opined that Claimant had lost the use of his left eye for all intents and purposes, but that he was not yet at maximum medical improvement. Dr. Balouris agreed that the diagnosis of a retinal detachment in the left eye was correct and that the treatment was appropriate and medically necessary. F.F. No. 5.

Ultimately, the WCJ found the testimony of Claimant to be credible based on his demeanor while testifying. The WCJ noted that Claimant's credibility is not at issue because this case involves the issue of medical causation. To that end, the WCJ accepted the opinions of Claimant's medical expert, Dr. Olsen, over Employer's expert, Dr. Balouris. In making this determination, the WCJ noted that Dr. Olsen performs retinal detachment surgery, while Dr. Balouris does not; Dr. Olsen is Claimant's treating physician; and Claimant was lifting cases of water when he became symptomatic. F.F. Nos. 11-12.

4

Based on the testimony and evidence provided, the WCJ found that Claimant sustained a loss of use for all practical intents and purposes of his left eye and that the loss was causally related to the incident that occurred on September 13, 2017, while in the course and scope of his employment with Employer. F.F. No. 13. By decision and order circulated on January 25, 2021, the WCJ granted Claimant's claim petition. From this decision, Employer appealed to the Board.

By decision dated October 22, 2021, the Board reversed the award of specific loss of sight benefits upon concluding that Claimant's medical evidence was insufficient to meet the legal standard, but affirmed in all other respects. The Board explained that Dr. Olsen did not offer any opinion in his reports or deposition regarding the impact of the left eye injury on the function of the uninjured right eye as is required in specific loss of sight cases where the eye is not destroyed. However, the Board found that Dr. Olsen's credible testimony otherwise supported the WCJ's determination that Claimant sustained a work-related retinal detachment of the left eye and is entitled to ongoing medical benefits related to the same. Claimant now petitions this Court for review.[1]

## II. Issues

On appeal, Claimant argues that the Board erred in reversing the WCJ's decision. Claimant maintains that the WCJ's specific loss determination is supported by substantial evidence and that the Board inappropriately reweighed the medical evidence in reversing.

---

[1] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Department of Transportation v. Workers' Compensation Appeal Board (Clippinger)*, 38 A.3d 1037, 1042 n.3 (Pa. Cmwlth. 2011).

## III. Discussion

It is well settled that, in workers' compensation cases, "[t]he WCJ is the ultimate finder of fact, and the exclusive arbiter of credibility and evidentiary weight." *LTV Steel Company, Inc. v. Workers' Compensation Appeal Board (Mozena)*, 754 A.2d 666, 676 (Pa. 2000). In executing his factfinding role, "the WCJ is free to accept or reject, in whole or in part, the testimony of any witness." *Id.* Determinations as to witness credibility and evidentiary weight are not subject to appellate review. *Joy Global, Inc. v. Workers' Compensation Appeal Board (Hogue)*, 876 A.2d 1098, 1103 (Pa. Cmwlth. 2005). However, the WCJ's evidentiary findings are not immune from review. *LTV Steel,* 754 A.2d at 676. "The WCJ must base [his] decision on substantial evidence." *Id.* "Substantial evidence" is such

> relevant evidence that a reasonable person might accept as adequate to support a conclusion. In reviewing a decision for substantial evidence, the court must view the evidence in the light most favorable to the party who prevailed before the WCJ and draw all reasonable inferences from the evidence in favor of the prevailing party. . . . [I]t is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made.

*Pocono Mountain School District v. Workers' Compensation Appeal Board (Easterling)*, 113 A.3d 909, 918 (Pa. Cmwlth. 2015) (internal citations and quotations omitted).

When a claimant alleges specific loss and seeks benefits pursuant to Section 306(c) of the Workers' Compensation Act (Act),[2] he bears the burden of proving that he suffered a permanent loss of use of his injured body part. *Crews v.*

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §513.

6

*Workers' Compensation Appeal Board (Ripkin)*, 767 A.2d 626, 630 (Pa. Cmwlth. 2001). "Where, as here, the eye has been injured but not destroyed, the test to determine whether compensation should be awarded is whether the eye was lost for all intents and purposes." *Scapellato v. Workmen's Compensation Appeal Board (Guardian Industry Corp.)*, 671 A.2d 1196, 1197 n.2 (Pa. Cmwlth. 1996). "Loss for all intents and purposes will be found where the injured eye *does not contribute materially* to the claimant's vision in conjunction with the use of the uninjured eye." *Id.* (emphasis added).

This "material contribution test" requires the factfinder to determine if the claimant's vision is materially improved when using both eyes rather than the good eye alone, not just whether the claimant in fact has vision in the injured eye. *Armco Steel Corp. v. Workmen's Compensation Appeal Board (Magnone)*, 448 A.2d 673, 675 (Pa. Cmwlth. 1982). As we have explained:

> Compensation may not be had if, using both eyes, the claimant can see better, in general, than by using the uninjured eye alone . . . or, as otherwise stated, there may be compensation if the use of the injured eye does not contribute materially to the claimant's vision in conjunction with the use of the normal eye. . . .

*Hershey Estates v. Workmen's Compensation Appeal Board (Rhoade)*, 308 A.2d 637, 639 (Pa. Cmwlth. 1973); *accord Armco Steel*, 448 A.2d at 675.

Whether vision is lost for all practical intents and purposes is a mixed question of law and fact. *Addy Asphalt Co. v. Workmen's Compensation Appeal Board (Sebastianelli)*, 591 A.2d 11, 12 (Pa. Cmwlth. 1991). Continued employability and earnings are not the standard to be employed in these types of cases. *Hershey Estates*, 308 A.2d at 639. The fact that corrective lenses may restore some or all vision does not affect the analysis. *Addy Asphalt Co.*, 591 A.2d at 13;

7

*see Tesco Tank Center, Inc. v. Workmen's Compensation Appeal Board (Zmarzley, Jr.)*, 528 A.2d 1036, 1038 (Pa. Cmwlth. 1987) (stating that "[w]hile we acknowledge that the use of contact lenses is more common than other prosthetic devices, we, nonetheless, conclude that where a work-related injury creates the need for such a device to restore normal vision, the proper focus must remain upon the uncorrected eye"). Even where a surgical or medical procedure restores some portion of the loss of function in the eye, the claimant's vision must be examined following the procedure or treatment to determine whether there is a loss of vision for all practical intents and purposes. *Scapellato*, 671 A.2d at 1198-99.

Here, Claimant bore the burden of proving that he lost the use of his left eye for all practical intents and purposes in order to receive specific loss benefits under the Act. To meet this burden, Claimant was required to show that his vision is not improved when using both eyes as opposed to just the uninjured eye and the use of the injured eye does not contribute materially to his overall vision in conjunction with the use of the normal eye. To that end, Claimant presented the medical testimony of Dr. Olsen.

As highlighted by Claimant, Dr. Olsen testified that "[b]ecause of the edema and because of the scar tissue, [Claimant] has been left with some distortion of vision." R.R. at 107a. Dr. Olsen acknowledged that the injured left eye can cause conflict with the good eye. R.R. at 108a. Dr. Olsen noted that "[s]ometimes when vision improves, it actually interferes more with the normal eye so there are issues with that." R.R. at 107a. Dr. Olsen confirmed that Claimant had lost the use of his left eye for central visual acuity, which is permanent. R.R. at 100a. Dr. Olsen further noted that, as of his last evaluation of Claimant on April 16, 2020, Claimant's vision

8

in his uninjured right eye was 20/25, while his vision in his injured left eye had improved to 20/63, from 20/400. R.R. at 104a.

However, Dr. Olsen offered no opinion in his report or deposition as to whether the injured eye materially contributes to Claimant's vision in conjunction with the uninjured eye. Dr. Olsen offered no opinion on whether Claimant's vision is better when using both eyes than when using the uninjured eye alone. Dr. Olsen did not otherwise testify that Claimant had lost the use of his left eye for all intents and purposes. Although we recognize that a doctor is not required to use "magic words" in rendering a medical opinion, *see Haney v. Workmen's Compensation Appeal Board (Patterson-Kelley Co., Inc.)*, 442 A.2d 1223, 1226 (Pa. Cmwlth. 1982), when Dr. Olsen's testimony is viewed in its entirety, and drawing all inferences that may be reasonably drawn from the evidence, Dr. Olsen's testimony falls short of meeting the legal standard required to entitle Claimant to specific loss of sight benefits.

Although Employer's expert, Dr. Balouris, testified that Claimant had lost the use of his left eye "for all intents and purposes," R.R. at 254a, Employer's evidence does not satisfy Claimant's burden of proof for two reasons. *See SKF USA, Inc. v. Workers' Compensation Appeal Board (Smalls)*, 728 A.2d 385, 388 n.3 (Pa. Cmwlth. 1999) ("A party's burden may be met where the necessary proof is introduced by his adversary."). First, the WCJ did not credit Dr. Balouris' testimony, and second, Dr. Balouris did not testify that Claimant's loss was permanent. Dr. Balouris testified and noted in his report that Claimant had lost the use of his left eye "for all intents and purposes" based on a left eye reading of 20/400. R.R. at 254a-55a. However, Dr. Balouris noted that, at the time of his exam and report, Claimant had not achieved "his maximum medical potential." R.R. at 254a. "[Claimant] had

9

a couple things that were treatable [and that] needed to be addressed." R.R. at 254a. Dr. Balouris opined: "[O]bviously . . . they have treated those . . . conditions to some degree" because Claimant's vision improved from 20/400 to 20/63. R.R. at 254a. Dr. Balouris acknowledged that while a left eye vision of 20/400 would not materially contribute to Claimant's vision, Claimant's vision has since improved. R.R. at 255a.

Contrary to Claimant's assertions, the Board did not reweigh the evidence or render new credibility findings in reversing the award of specific loss benefits. Rather, the Board simply reviewed Dr. Olsen's credible testimony in its entirety and determined it did not constitute substantial evidence as a matter of law to support a conclusion that Claimant had lost his left eye for all intents and purposes.

## IV. Conclusion

Upon review, we conclude that the Board did not err or abuse its discretion in determining that Claimant failed to carry his burden of proof for specific loss benefits. Accordingly, we affirm.

MICHAEL H. WOJCIK, Judge

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph J. Trovato, Jr.,          :
                                        :
             Petitioner    :
                                          :
       v.                             :   No. 1263 C.D. 2021
                                          :
Citizens Financial Group       :
(Workers' Compensation       :
Appeal Board),                 :
                                          :
            Respondent   :

O R D E R

AND NOW, this 29th day of August, 2022, the order of the Workers' Compensation Appeal Board, dated October 22, 2021, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge